STATE of Missouri, Respondent,

v.

Terry G. WATSON, Appellant.

No. ED 98713.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 3, 2013.

Alexa I. Pearson, Columbia, MO, for appellant.

Chris Koster, Jessica P. Meredith, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Terry Watson (Defendant) appeals his convictions following a jury trial of first degree statutory rape, second degree statutory rape, two counts of first degree sodomy, and incest. We affirm.

### Background

The evidence at trial supporting the verdicts was as follows. The Victim (Victim) is the daughter of Defendant and Gina Watson (Mother). She grew up living with both parents in Imperial, Missouri. Sometime in 2001, when Victim was 12 years old, she came home from school to find her

father sitting on the couch watching pornography on television. Mother was still at work. Victim had seen the film her father was watching, and he told her that day that he knew she had watched his pornography. Defendant told Victim he was going to teach her what sex was about. Nothing further happened that day.

At some point after this, when Victim was still 12 years old, Defendant called Victim into his bedroom. He told her he was going to work her out. She was on her parents' bed, and Defendant put a dildo inside her vagina. She cried and told him it hurt. He continued to use objects like this with Victim for about one year, at least three to four times per month.

Sometime after Defendant stopped using dildos on Victim, he called her into his bedroom, had her get on her knees, and instructed her to suck on his penis. This happened during the school year in the afternoon. Victim gagged and teared up at one point, and Defendant told her he would not do it like that again. Defendant had Victim suck on his penis multiple times until Victim was 18 or 19 years old.

At some point when Victim was around 13 years old, Defendant began having sexual intercourse with her. It would take place either in Defendant's bedroom or the living room. In the living room it would take place either on the couch or on the floor. When it took place in the living room, Defendant would turn pornography on the television, Victim would take her clothes off, Defendant would take his clothes off, and he would be on top of her while having sex with her. Defendant had sex with Victim three to four times per month.

At some point when Victim was 13 or 14 years old, Mother found out about Defendant's sexual activity with Victim. Victim heard her parents arguing about it, and after that, Mother became involved. Victim testified it would then be "sex between the three of [them]" sometimes. Victim also testified that Defendant wanted to make sure she had not told anyone about their sexual activity, but that learning about sex from family members was normal and would happen for kids in Germany around age 12. Victim testified that the last time any sexual activity occurred between Defendant and Victim was in January of 2009.

Victim's half-brother and Defendant's son, Joseph Watson (Brother), moved into Defendant's house in 2003, when Brother was 15 years old. Brother also became aware of Defendant's sexual activity with Victim, and he witnessed Defendant and Victim having sexual intercourse. Brother also became involved in "family sex sessions" that took place with Defendant, Mother, Brother, and Victim all present. Brother testified that Defendant also told Brother to perform sexual acts on Victim, which he did. When Brother was 17 years old, after an incident in which Defendant became angry with Brother and threw a pick axe at Brother and Victim, Brother moved out.

Victim did not tell anyone about these incidents until 2010. She was dating a man who her father did not like, and she wanted to move out of the house. She told her aunt and her boyfriend about the sexual incidents with Defendant. She was afraid she would not be able to get her things out of her house safely, because Defendant was "abusive" and had threatened violence against her boyfriend. She asked police to accompany her to her home so she could remove her things. Deputy Carden Choney went with Victim and her boyfriend to Victim's house. Deputy Choney waited outside while Victim retrieved her things, and no one else was present while they were there. Deputy Choney

consulted detectives about further investigation, and he decided not to investigate for physical evidence of the sexual abuse in the house. This was because, given that it had been over one year since the last sexual incident, the detectives told Deputy Choney they believed no DNA evidence would be present.

The jury returned verdicts of guilty on all counts. The trial court sentenced Defendant to a total term of 19 years in the Missouri Department of Corrections. This appeal follows. Additional facts relevant to Defendant's points on appeal will be adduced below.

## Discussion

Defendant raises three points on appeal. First, he argues the trial court abused its discretion in submitting an instruction to the jury regarding the requirement of unanimity for the count of first degree statutory rape. Second, Defendant argues the trial court plainly erred in allowing the prosecutor to make certain statements in closing argument, and that those statements resulted in manifest injustice. In Defendant's final point, he argues the trial court plainly erred in admitting Brother's testimony regarding Defendant's alleged violence toward Brother, in that it was prejudicial evidence of uncharged crimes, resulting in manifest injustice.

## Point I

### Preservation and Standard of Review

At the close of the evidence at trial, the State submitted Instruction 8, based on the applicable Missouri Approved Instruction (MAI) for the count of statutory rape in the first degree, MAI–CR 3d 320.03. The State also submitted the following as Instruction 9:

The State of Missouri, County of Jefferson alleges that [D]efendant committed acts of Statutory Rape in the First Degree, to wit: [D]efendant had sexual intercourse with [Victim], who was less than fourteen years old, on multiple occasions in Instruction No. 8. To convict [D]efendant of Statutory Rape in the First Degree, one particular act of Statutory Rape in the First Degree, to wit: having sexual intercourse with [Victim], must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that [D]efendant committed all the acts of Statutory Rape in the First Degree.

The State based this instruction on a recent Missouri Supreme Court opinion, *State v. Celis–Garcia*, 344 S.W.3d 150 (Mo. banc 2011), which, as discussed below, clarified the requirement of a unanimous verdict in cases presenting evidence of multiple criminal acts related to one count. Similarly, the State submitted applicable MAI instructions for the remaining four counts against Defendant, as well as accompanying instructions for each based on *Celis–Garcia*.

Defense counsel objected to all of the *Celis–Garcia*-based instructions, arguing that they would confuse the jury and could lead to wrongful convictions. Defense counsel requested that the trial court remove those instructions, which the trial court denied. In his motion for new trial, Defendant argued the trial court erred by overruling his objection to Instruction 9. Defendant concedes only his objection to Instruction 9 is preserved. *See* Rule 29.11(d)[1] (allegations of error must be included in motion for new trial). However, Defendant also argues that the similarity of Instruction 9 to the other four *Celis–Garcia*-based instructions severely misdi-

---

1. All rule references are to Mo. R.Crim. P. (2013) unless otherwise indicated.

rected the jury about the case as a whole, requiring reversal of all of Defendant's convictions.

■■■■■ Regarding Defendant's preserved claim of error, we review the trial court's decision to submit Instruction 9 to the jury for abuse of discretion. *See State v. Davis*, 318 S.W.3d 618, 630 (Mo. banc 2010) (quoting *State v. Johnson*, 244 S.W.3d 144, 150 (Mo. banc 2008)). A court should not give an instruction that is in conflict with substantive law. *Id.* We will reverse where an instruction misled, misdirected, or confused the jury, and the defendant was prejudiced. *State v. Miner*, 363 S.W.3d 145, 149(Mo.App.E.D.2012).

Regarding the remaining *Celis–Garcia*–based instructions, under Rule 30.20, plain error is error that is "evident, obvious, and clear." *State v. Smith*, 370 S.W.3d 891, 896 (Mo.App.E.D.2012). Where a claim of plain error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted," we may exercise review to determine whether such injustice actually occurred, *Id.*

### Analysis

■■■ Defendant argues that the trial court abused its discretion in submitting Instruction 9 to the jury, in that it misdirected the jury and reduced the State's burden of proof on the charge of statutory rape in the first degree. Defendant asserts this is because the instruction failed to follow the Missouri Supreme Court's requirements laid out in *Celis–Garcia*. We disagree.

Criminal defendants have the right to a unanimous jury verdict. MO. Const. art. I, sec. 22(a); *Celis–Garcia*, 344 S.W.3d at 155. In *Celis–Garcia*, the Missouri Supreme Court clarified the standard for ensuring a unanimous verdict in "multiple acts" cases. Such a case "arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis–Garcia*, 344 S.W.3d at 155–56. The parties agree here that the evidence relating to the count of first-degree statutory rape—that Defendant had sexual intercourse with his daughter repeatedly over a course of years beginning when she was 13 years old—identifies this case as a multiple acts case. *See id.* at 156 (listing factors distinguishing multiple acts cases).

In *Celis–Garcia*, the Missouri Supreme Court observed that a danger to a defendant's right to unanimity exists in a multiple acts case where the verdict director lists generally the elements of the offense and where those elements could be met by several acts in evidence. *Id.* at 156. In such a case, the possibility exists that jurors follow all instructions, yet individually choose differing instances of the crime on which they base the conviction. Because in that scenario jurors can convict but not necessarily agree unanimously to any one instance in evidence, the defendant's right to a unanimous verdict is not upheld. *See id.* at 157–58. The Missouri Supreme Court pointed out that this danger is especially present where the defense attempts to exploit factual inconsistencies and improbabilities regarding each act in evidence, rather than making a general allegation that the victim fabricated his or her story. *Id.* at 159.

Therefore, the Missouri Supreme Court concluded that the following two types of verdict directors would ensure a defendant's right to unanimity in a multiple acts case: either (1) where the verdict director "elect[s] the particular criminal act on which it will rely to support the charge," or (2) where the verdict director "specifically describ[es] the separate criminal acts

presented to the jury and the jury [is] instructed that it must agree unanimously that at least one of those acts occurred." *Id.* at 157.

Here, Instruction 9 fell into neither of those categories. While Instruction 9 stated that the jurors must agree unanimously to the occurrence of one act of sexual intercourse, the State neither elected a particular act for the jury to consider, nor provided specific descriptions of the separate acts in evidence. Defendant argues this failure to specify acts in either way violated the requirements of *Celis–Garcia.*

However, the Missouri Supreme Court did not go so far as to require one of the above verdict director modifications in *every* multiple acts case. The evidence in *Celis–Garcia* consisted of multiple acts of sexual abuse, but each act in evidence was distinct in type of sexual act and in location. *Celis–Garcia,* 344 S.W.3d at 156. The State there had raised a different fact situation, arguing that if the court mandated a sweeping requirement to identify specific distinct acts in the verdict director, such a requirement would be impossible to follow in cases where the victim alleges a pattern of identical acts of abuse occurring in the same location over a period of time and therefore has difficulty differentiating between them. *Id.* at 157 n. 8. The court replied, "[t]he case hypothesized by the [S]tate was not the one presented here because both [victims] provided details of multiple sexual acts that were committed at different times and in different locations." *Id.*

The scenario raised by the State in *Celis–Garcia* is precisely the one we face here. While Victim described the acts of statutory rape as taking place in two locations, either in the master bedroom or the living room, she testified that these incidents took place three to four times per month, repeatedly in both locations. She described a "routine" that was similar with each criminal act. She did not distinguish between each specific act in her testimony, as each act was similar each time and each happened multiple times. The only distinction was location, yet multiple identical acts took place in each location. Thus, Defendant's argument that *Celis–Garcia* requires use of one of its two verdict directors here, in a factual circumstance that the court specifically declined to consider, is unfounded.

In fact, this year, the Missouri Supreme Court approved revisions to the Notes on Use for the MAI applicable to a principal offense in order to address issues arising after *Celis–Garcia.* *See* MAI–CR 3d 304.02, Note 7 (effective July 1, 2013). Note 7 states that "[t]here are two options when there are distinct criminal acts" based on *Celis–Garcia.* The Note continues, however, "[i]n a case consisting of evidence of the same repeated criminal act, ... [i]t is unclear whether the standard verdict directing instruction must be modified ... to ensure a unanimous verdict." MAI–CR 3d 304.02, Note 7 (quoting *Celis–Garcia,* 344 S.W.3d at 157 n. 8).

Thus, we must consider whether the modification employed here, Instruction 9, confused, misled, or misdirected the jury, causing prejudice to Defendant. We find it did not.

Instruction 9 plainly told the jury that they must unanimously agree on one act, and that they must agree to the same act. This is consistent with substantive law requiring a unanimous verdict. In fact, authority upon which our Supreme Court relied in *Celis–Garcia* suggests that an instruction specifically telling the jury they must unanimously agree to one act, even without further specificity regarding acts in evidence, will uphold the defendant's rights in a case where multiple identical acts are alleged. *See* 23A C.J.S. *Criminal*

*Law* § 1647 (Cum.Supp.2013) (stating either state must elect particular act, or "an instruction must be given stating that the jurors must unanimously find the same underlying criminal act has been proved beyond a reasonable doubt"; allowing that in the latter case "the jury *may* be instructed on several different criminal acts in the disjunctive, but it will still be instructed that it must unanimously agree on one specific act" (emphasis added)) (citing cases); *accord, e.g., State v. Arceo,* 84 Hawai'i 1, 928 P.2d 843, 874 (1996), *cited in Celis–Garcia,* 344 S.W.3d at 157; *State v. Kitchen,* 110 Wash.2d 403, 756 P.2d 105, 109 (1988), *cited in Celis–Garcia,* 344 S.W.3d at 157.

Defendant fails to point out how, given the evidence, the State could have differentiated between each of the acts of statutory rape alleged. The only distinguishing factor between the many instances was that sometimes they took place in the living room, and sometimes in the master bedroom. The State clarified Instruction 9 in closing argument, pointing out this distinction in the evidence, and told the jury that they must agree to "at least one act, in one location." Under the circumstances here, we see no basis for the jury to be confused regarding the meaning of Instruction 9.

Defendant argues, however, that Instruction 9 was confusing because it affirmatively told the jury they did not need to agree that Defendant committed all of the acts. However, we do not see potential for confusion here. The instruction was clear that the jury must agree to the same act. Defendant had disputed the veracity of Victim's testimony regarding sexual intercourse in the living room with pornography playing on the television, because according to Defendant, there was no television in the living room during that time period due to construction in the house.

Thus, even if the jury believed Defendant's testimony regarding the living room, there was still evidence from which they could all agree that the incidents of first degree statutory rape occurred in the bedroom.

Along these lines, Defendant argues that because his defense sought to raise factual inconsistencies with Victim's testimony in this way, the jury more likely convicted him on the basis of separate events in evidence. *See Celis–Garcia,* 344 S.W.3d at 159. However, this danger is exactly the one addressed by Instruction 9. Indeed in this case, had Instruction 8, the verdict director, been given without modification, Defendant's right to a unanimous verdict would have been violated, due to the evidence of multiple acts related to the one count of first-degree statutory rape. Instruction 9 specifically addressed this concern by telling the jury they must agree to one act.

Defendant further argues Instruction 9 diminished the State's burden of proof because it suggested they could disregard inconsistent evidence as long as the entire jury agreed to one act. We do not agree this diminishes the State's burden of proof. We presume the jury followed the court's instructions. *State v. Madison,* 997 S.W.2d 16, 21 (Mo. banc 1999). They were instructed that they must find each element of first-degree statutory rape beyond a reasonable doubt, and that they must all find these elements present in the same act of statutory rape. The apparent implication of Defendant's argument is that the jury must believe all instances in evidence or none. However, it was possible from the evidence for the jury to believe that sexual intercourse occurred multiple times in one location and to disbelieve it occurred in another location. Such belief by the jury would still support a conviction on

the one count of first-degree statutory rape.

Finally, Defendant argues the instruction allowed the jury to convict Defendant of multiple uncharged acts in evidence, as long as the jury unanimously agreed they took place. However, Instruction 9 was given in tandem with Instruction 8, which listed the elements the jury must find to convict Defendant of statutory rape in the first degree. Instruction 9 itself reiterated those elements and told the jury they must find those elements present beyond a reasonable doubt in the same act by Defendant. There were no uncharged acts of first-degree statutory rape; and any other uncharged acts in evidence would not have satisfied the elements of first degree statutory rape. Thus, the jury could not find Defendant guilty of uncharged acts by following Instruction 9. We presume the jury followed the court's instructions. *Madison*, 997 S.W.2d at 21. Given the circumstances of this case, Instruction 9 did not confuse, misdirect, or mislead the jury, and Defendant was not prejudiced thereby.

Similarly, we find no facial error with the remaining *Celis–Garcia*-based instructions.[2] Thus, we decline to exercise plain error review. *See State v. Irby*, 254 S.W.3d 181, 192 (Mo.App.E.D.2008). Point denied.

## Point II

■ Defendant argues the trial court plainly erred by failing to *sua sponte* intervene during the State's closing argument. We disagree.

■ We seldom find plain error in closing argument to which counsel does not object. *State v. White*, 247 S.W.3d 557, 563 (Mo.App.E.D.2007). Where trial strategy is an important consideration, and the trial court is left only with "uninvited interference with summation," we generally deny such assertions of plain error without explanation. *Id.* In determining whether plain error exists, we interpret the challenged comments in light of the entire record. *Id.*

Defendant had presented evidence at trial that he had a medical condition that made Victim's testimony incredible. Specifically, he testified that due to various injuries and medication he was taking for those injuries, he could not maintain an erection unless his wife was on top of him. His counsel argued that Victim's testimony that Defendant was always on top of her when they had intercourse would, therefore, have been physically impossible. Defendant introduced medical records of a

2. The count of second-degree statutory rape is based on the same testimony of Victim as the count of first-degree statutory rape, but includes only instances after Victim turned 14. The count of incest is based on the same facts related to both counts of statutory rape. Thus, our previous analysis applies, and we see no plain error regarding the *Celis–Garcia*-based instructions. Regarding the two remaining counts of statutory sodomy, one required the jury to find that Defendant inserted an object into Victim's vagina, and the other required the jury to find that Defendant placed his penis inside Victim's mouth. In her testimony, Victim described in detail one specific incident of each, and then testified generally that Defendant used objects on her repeatedly, and put his penis in her mouth multiple times. She gave no further details regarding the circumstances surrounding additional incidents. Because there was only one detailed instance of each in evidence, and essentially no potential for confusion between the additional general acts of each type of statutory sodomy, we see no plain error facially present in the court's *Celis–Garcia*-based instructions for the statutory sodomy counts. *See Baker*, 948 N.E.2d at 1177 (quoting *People v. Jones*, 270 Cal.Rptr. 611, 792 P.2d 643, 650, 659 (1990)) (where "generic" evidence of repeated sexual acts, no reasonable likelihood of juror disagreement as to particular acts and only question is whether or not defendant committed all of them).

knee surgery he had had at trial, but no records documenting erectile dysfunction.

During closing argument, the prosecutor discussed Defendant's credibility, arguing the State's witnesses were more credible than Defendant's. He continued:

> If you are on trial for this, for something like this, and you didn't commit, you want to prove your innocence. You absolutely do.... But if you are faced with an offense that requires sexual activity, and you can't perform it regularly. And you've allegedly have [sic] medical documentation to that effect, but what you actually bring to a show—to show to the jury is a knee problem?

The prosecutor then went on to say that he would have some more time in rebuttal to talk with the jury after the defense gave its closing, "because the burden in any criminal case is on the State. Absolutely."

In the defense's closing argument, defense counsel reminded the jury that the State had the burden of proof and that it was not up to Defendant to prove his erectile dysfunction through medical records. The State in rebuttal said the following:

> [T]he burden is always on the State in a criminal case. However, the trick is, once the defendant opens his mouth, it's fair game. So he trots in medical records to show his condition ... When the actual records that would actually poke holes in her case, the erectile dysfunction, weren't given. So yeah, I do still have the burden of proof, but don't get confused for a second. The second they opened their mouth, it's fair game.... [I]f you are trying to prove yourself, and that this story is made up, you don't do something like that. And he has known that this case was coming for a long time. What has he got for you? A bum knee.

In light of the whole record, we do not see plain error in the trial court's decision not to intervene in this argument absent a defense objection. While Defendant correctly points out that intentional misstatements of the burden of proof are plain error, we do not see such misstatements present in the context of the whole record. *Cf. State v. Jackson,* 155 S.W.3d 849, 854 (Mo.App.W.D.2005). Rather, the State correctly represented the burden of proof in its initial closing and in rebuttal. The State then clarified that once Defendant testified, the State was at liberty to attack Defendant's conclusions regarding the evidence and point out Defendant's own inconsistencies, despite Defendant's attempt to show himself innocent. *See State v. Taylor,* 831 S.W.2d 266, 269–70 (Mo.App. E.D.1992). These are not misstatements of the law. *See id.* We see no evident, obvious, and clear error on the part of the trial court, and thus we need not determine whether any error caused manifest injustice. *See Irby,* 254 S.W.3d at 192. Point denied.

### *Point III*

■ Defendant argues the trial court plainly erred by allowing the State to elicit testimony from Brother, over defense objection, about Defendant's alleged physical abuse of Brother. Defendant concedes this allegation of error was not preserved in his motion for new trial, and therefore requests plain error review. Defendant contends that because Defendant was not charged with any crimes related to this evidence, it was inadmissible and resulted in manifest injustice. We disagree.

■ In securing a defendant's right to due process of law, it is the trial court's duty to ensure that the defendant is not convicted of an uncharged offense. *State v. Miller,* 372 S.W.3d 455, 467 (Mo. banc 2012). To that end, evidence of uncharged

crimes is inadmissible for the purpose of showing the defendant's propensity to commit the crime with which he or she is charged. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). However, there are other purposes for which this evidence may be admitted, all of which relate to establishing the defendant's guilt regarding the charged crime. See *id.* (listing permissible purposes). In reviewing the admission of evidence of uncharged crimes for plain error, we first must find the trial court committed error that is evident, obvious, and clear. *Irby*, 254 S.W.3d at 192. Then, we must find that the error resulted in manifest injustice, namely, "that the trial court's error in admitting the evidence was outcome determinative." *Id.*

Here, during defense counsel's cross-examination of Brother, counsel asked whether Defendant was a strict father. Brother answered that Defendant was very strict. Defense counsel asked whether Defendant wanted things done in a safe way and in a responsible way, and Brother replied he would not say safe or responsible. During redirect examination, the prosecutor asked Brother to explain why he said Defendant was strict, but not safe or responsible. Brother then described working on various construction projects with Defendant, during one of which Brother was injured. Brother testified Defendant wanted Brother to show people his injury "like a badge of honor." Brother also testified that while they were working on projects, Defendant "would get angry, and kick you in the head, he would grab you by the back of the head, and smash your face . . . ." At this point defense counsel objected to the relevance, and the State responded that defense counsel had opened the door to Brother's explanation of why his father was strict, but not safe or responsible. The trial court overruled the objection.

Brother went on to testify, without objection, that "constantly . . . if you were working with dad and you didn't do something exactly right, he would become angry and would strike you." In another instance, Brother had severed the tip of his finger working on a construction project, and Defendant took him to the hospital to get stitches. The next day, Defendant had Brother continue to work because "in real life, if you got injured on the job site, your family would starve to death." Brother also described an incident in which he forgot to feed their chickens, and Defendant decided Brother was allowed to eat only what the chickens produced for a week; about one egg per day. This lasted for three days, and in continuing to work on projects outside over those days with Defendant, Brother remembered feeling very dizzy.

We do not find plain error in the trial court's admission of this testimony. First, when a defendant injects an issue into a case, the prosecution may be entitled to introduce otherwise inadmissible evidence in order to rebut a negative inference. *State v. Bolds*, 11 S.W.3d 633, 639 (Mo. App.E.D.1999). Here, defense counsel's opening statement had included statements that Defendant was a strict father because he made them go to school, have jobs, and do chores; and that his children resented him because of it. Defense counsel sought confirmation of this statement when he asked Brother if Defendant was strict in ways that were safe and responsible. Brother did not agree, but the jury could have believed this was because Brother considered chores, work, and schoolwork to be too strict, unsafe, and irresponsible. The State, therefore, was permitted to have Brother explain why he felt Defendant's strictness was neither safe nor responsible. The trial court did not commit error by permitting Brother to

describe his reasons for his feelings in this respect. *See State v. Rutter*, 93 S.W.3d 714, 727 (Mo. banc 2002) (stating irrelevant evidence "can nevertheless become admissible because a party has opened the door to it with a theory presented in an opening statement").

Additionally, defense counsel did not object to Brother's further description of Defendant's response to his finger injury, or of Defendant's discipline when Brother forgot to feed their chickens. Defendant argues the trial court's failure to interject *sua sponte*, to exclude this evidence of uncharged acts against Brother, was an abuse of discretion that affected the outcome of his trial. However, Victim had previously testified without objection that her father was "abusive" separately from the sexual acts, explaining that she was afraid she would not be able to move out of her house safely because her father had said that if her boyfriend took her away from Defendant, he would "put a bullet in the back of his head." Given this, and the fact that the verdicts regarding the sexual offenses were almost solely based on the jury's assessment of Victim's credibility regarding the sexual acts, we do not find that this testimony by Brother, even if admitted in error, had an outcome-determinative effect on the jury's verdicts. *See Bolds*, 11 S.W.3d at 639. Point denied.

### Conclusion

The trial court did not abuse its discretion in giving Instruction 9 to the jury, because the instruction conformed to applicable law and did not confuse or mislead the jury. Similarly, we find no plain error in the trial court's giving of the other *Celis–Garcia*–based instructions. The trial court did not plainly err in allowing the State's closing argument, nor do we find plain error resulting in manifest injustice in the trial court's allowance of Brother's

testimony explaining why he felt Defendant was strict. We affirm.

ROBERT M. CLAYTON III, C.J., and MICHAEL K. MULLEN, S.J., concur.