**STATE of Missouri, Respondent,**

v.

**Robert Earl CARLTON, Jr., Appellant.**

**No. ED 104494**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

FILED: September 5, 2017

Ellen H. Flottman, Woodrail Centre, 1000 West Nifong, Bldg 7, Suite 100, Columbia, MO 65203, for appellant.

Joshua D. Hawley, Nathan J. Aquino, P.O. Box 899, Jefferson City, MO 65102, for respondent.

KURT S. ODENWALD, Judge

## Introduction

Robert Earl Carlton, Jr. ("Carlton") appeals from the trial court's judgment, entered after a jury convicted him on two counts of first-degree child molestation. On appeal, Carlton argues that the trial court plainly erred in submitting verdict directors that did not comply with State v. Celis-Garcia, 344 S.W.3d 150 (Mo. banc 2011), thereby failing to ensure his constitutional right to a unanimous jury verdict. Because the verdict directors, as given, did not ensure juror unanimity as to the criminal conduct supporting Carlton's convictions, his constitutional right to a unanimous jury verdict was violated. Accordingly, we reverse the trial court's judgment and remand the case for a new trial.

## Factual and Procedural History

The State charged Carlton, as prior offender, with two counts of first-degree statutory sodomy. Both charges alleged that Carlton forced Victim to "touch his penis with her hand." The case proceeded to a jury trial.

At trial, Victim testified that she considered Carlton a part of her extended family. Victim recalled that, when she was seven years old, Victim's mother sent her and her older brother to Carlton's apartment every day before school. While waiting for the bus, Carlton would instruct Victim's brother to go outside and watch for its arrival. Carlton and Victim always remained in the living room.

Carlton would then try to grab Victim's blanket and pull her onto the couch. Victim remembered that, on the couch, Carlton "would grab my wrist and put it where he shouldn't have." Victim explained that Carlton made her touch his "downstairs," that he moved her hand up and down while moaning, and that the touching was outside of his clothing. According to Victim, this happened every morning. To Victim, the encounters made her feel "very uncomfortable," and she "didn't like it at all." Victim stated that the first instance of abuse "didn't feel right and I was kind of confused why he was doing it." Victim also testified that Carlton forced her to "go on the inside of the clothing, probably once or twice." The touching always stopped when the school bus arrived and Victim's brother came back inside. Victim claimed that both Carlton's wife and young daughter were home sleeping in a separate room while the touching occurred.

Victim's mother testified that Victim and her older brother waited for the bus at Carlton's apartment from January 2012 to

May 2013, when Victim first informed her about the purported abuse. Victim's mother then brought Victim to the Children's Advocacy Center ("CAC"). Victim was interviewed twice, and the State presented both of the CAC interviews to the jury.

The first interview was conducted shortly after Victim's family reported the allegations. In the interview, Victim stated that Carlton had made her touch him on his "junk" several times. Victim relayed that this touching happened "way more than one" time and that the touching probably started when she was five or six, and ended when she was seven. According to Victim, these encounters occurred in the mornings while she waited for the school bus. However, Victim also claimed that Carlton forced her to touch him at other times when she would visit Carlton's apartment to play with his young daughter, while Carlton's wife was at work. Victim clearly stated that no touching occurred beneath Carlton's clothes.

In the second interview, which occurred a few months before trial, Victim reiterated that the abuse on the couch happened "many, many times." Victim then stated that the abuse happened in the mornings before school. Victim clarified that Carlton would pull down his shorts before the touching occurred.

Carlton testified in his own defense. Carlton denied all allegations of abuse, testifying that Victim never touched his penis. Carlton recalled that Victim and her brother were often at his apartment and that he babysat them frequently. According to Carlton, he did not order Victim's brother to stand outside and sometimes everyone waited outside for the bus together. Carlton also remembered that both his wife and young daughter were often present in the mornings before school, as his wife was sometimes awake to care for their young daughter. During the twenty-minute wait for the bus, Carlton would prepare for work, dress, play video games with Victim's brother, and eat breakfast.

The State called Victim's brother in rebuttal, who testified that he always waited outside for the bus, while Carlton and Victim remained indoors. Victim's brother stated that, after seeing the bus approach, he would knock on the door and enter the living room. Although never seeing "anything bad going on," Victim's brother remembered that, more often than not, Victim and Carlton would be together on the couch.

The trial court instructed the jury on two counts of first-degree statutory sodomy. The trial court also instructed the jury on the lesser-included offense of first-degree child molestation for each count. For Count I, the jury was instructed, in part, that:

> [a]s to Count I, if you find and believe from the evidence beyond a reasonable doubt: First, that on or about 2012 to 2013 ... the defendant knowingly placed [Victim's] hand on defendant's genitals, and Second, that such conduct constituted deviate sexual intercourse, and Third, that at that time [Victim] was a child less than twelve years old, then you will find the defendant guilty under Count I of statutory sodomy in the first degree.[1]

1. The verdict directors for first-degree statutory sodomy were based on MAI-CR 3d 320.11. The verdict directors also included the following definition of deviate sexual intercourse: [A]ny act involving the genitals of one person, and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ, or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire

For the lesser-included offense of first-degree child molestation, the jury was instructed, in part, that:

[a]s to Count I, if you do not find the defendant guilty of statutory sodomy first degree as submitted [in the instruction above], you must consider whether he is guilty of child molestation first degree under this instruction. If you find and believe from the evidence beyond a reasonable doubt: First, that on or about during 2012 and 2013 ... the defendant caused [Victim] to touch his genitals with her hand, and Second, that he did so for the purpose of arousing or gratifying his own sexual desire, and Third, that [Victim] was a child less than twelve years old, then you will find the defendant guilty under Count I of child molestation in the first degree.[2]

For Count II, the jury was instructed with a *nearly identical* pair of verdict directors on first-degree statutory sodomy and first-degree child molestation. The verdict directors for Count II only differed as to the count and instruction numbers. Nothing else distinguished the verdict directors on Count I from those on Count II.

Carlton did not object to the instructions as offered at trial. Nor did Carlton raise instructional error in his motion for a new trial. The jury found Carlton guilty of first-degree child molestation on both counts. The trial court then sentenced Carlton to thirteen years in prison on each count, to run consecutively. This appeal follows.

## Point on Appeal

Carlton's sole point on appeal charges the trial court with plain error for submitting the child-molestation verdict directors because the verdict directors failed to specify a particular incident or instruct the jurors that they must unanimously agree upon the same incident in order to convict, thereby violating Carlton's constitutional right to a unanimous jury verdict under Celis-Garcia.

## Standard of Review

■ Carlton did not object to the instructions at trial pursuant to Rule 28.03 [3] and did not raise instructional error in his motion for a new trial as required by Rule 29.11(d). Carlton concedes that his failure to do so resulted in a waiver of his claim. See State v. Oudin, 403 S.W.3d 693, 696-97 (Mo. App. W.D. 2013). Because Carlton failed to preserve his claim of error, we are limited to plain-error review. State v. Chambers, 481 S.W.3d 1, 7 (Mo. banc 2016).

■ Rule 30.20 permits that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Review for plain error under Rule 30.20 is a two-step process. State v. Myles, 479 S.W.3d 649, 655 (Mo. App. E.D. 2015). First, the reviewing court "must determine whether the claimed error is, in fact 'plain error[ ] affecting substantial rights.'" State v. Hunt, 451 S.W.3d 251, 260 (Mo. banc 2014) (quoting Rule 30.20). Plain errors are evident, obvious, and clear. Myles, 479 S.W.3d at 655. "Substantial rights are involved if, facially, there are significant grounds for believing that

of any person or for the purpose of terrorizing the victim.

**2.** The verdict directors for first-degree child molestation were based on MAI-CR 3d 320.17.

**3.** All rule references are to Mo. R. Crim. P. (2016).

the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." Hunt, 451 S.W.3d at 260. "Instructional error is plain error when it is apparent the error affected the verdict." Id. Second, if plain error affecting substantial rights is found on the face of that claim, the court must determine whether the claimed error actually resulted in manifest injustice or miscarriage of justice. State v. Baumruk, 280 S.W.3d 600, 607-608 (Mo. banc 2009). The defendant bears the burden of showing that plain error transpired, resulting in manifest injustice or miscarriage of justice. Myles, 479 S.W.3d at 656.

## Discussion

### I. Juror Unanimity Under Celis-Garcia

Carlton charges the trial court with plain error for submitting two identical verdict directors on the lesser-included offenses of child molestation, thereby violating his constitutional right to a unanimous jury verdict. Carlton posits that the identical jury instructions failed to comply with Celis-Garcia, and did not ensure that the jury unanimously agreed that Carlton committed any particular criminal act. We agree.

Article I, Section 22(a) of the Missouri Constitution guarantees a criminal defendant the right to a unanimous jury verdict. State v. Celis-Garcia, 344 S.W.3d 150, 155 (Mo. banc 2011) (citing State v. Hadley, 815 S.W.2d 422, 425 (Mo. banc 1991)). This guarantee is "a fundamental right," ensuring that the accused, if tried by jury, has "twelve people that unanimously concur in the guilt of the defendant before he or she can be legally convicted," State v. Goucher, 111 S.W.3d 915, 917 (Mo. App. S.D. 2003). A necessary prerequisite to unanimously concurring in the defendant's guilt is that the jurors substantially agree as to the defendant's

acts that form the basis of the criminal conduct. Celis-Garcia, 344 S.W.3d at 155. Ensuring jury unanimity necessitates the verdict-directing instructions "be definite enough that the jury is required to agree unanimously on which alleged unlawful act or acts occurred." Mallow v. State, 439 S.W.3d 764, 769 (Mo. banc 2014).

Most notably, the Supreme Court of Missouri in Celis-Garcia addressed the jury-unanimity requirement. In Celis-Garcia, the State charged the defendant with two counts of statutory sodomy. 344 S.W.3d at 152. At trial, the two victims testified regarding multiple incidents of abuse that occurred in different locations and in different ways. See id. at 153. Despite having the evidence of multiple criminal acts, the jury was instructed that, to convict the defendant of statutory sodomy, it must believe that the defendant had committed an act constituting statutory sodomy during the charged dates. See id. at 154-55. The verdict directors did not specify a distinct location or circumstance, or otherwise identify the incident of statutory sodomy that the defendant had purportedly committed with any particularity, See id.

In finding plain error, the Court noted that:

[d]espite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted [the defendant] of the same act or acts ... This broad language allowed each individual juror to determine which incident he or she would consider in finding [the defendant] guilty of statutory sodomy.

Id. at 156. Accordingly, the Court held that, because it was "impossible to determine whether the jury unanimously agreed

on any one of these separate incidents, the verdict directors violated [the defendant's] constitutional right to a unanimous jury verdict[.]" Id. at 158. The Court, exercising plain-error review, reversed the defendant's convictions and remanded for a new trial. Id. at 159.

The Celis-Garcia court also provided guidance in handling cases where evidence of multiple criminal acts is presented to prove a lone charged crime, thereby creating a potential for jurors to rely on different underlying acts to support their individual decision to convict. Id. at 155-56. The Court explained that multiple-acts cases arise when there is "evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Id. The Court listed the following factors to consider when determining whether a case contained multiple acts:

> (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.

Id. at 156 (quoting 75B Am. Jur. 2D *Trial* § 1511 (2007)). To ensure juror unanimity in such cases, the Court instructed that a defendant's right to a unanimous jury verdict would be protected in one of two ways. Id. at 157. The State must either "(1) elect[ ] the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describ[e] the separate criminal acts presented to the jury and the jury be[ ] instructed that it must agree unanimously that at least one of those acts occurred." Id.

Both critical and challenging to our analysis of this case, the Celis-Garcia court

specifically declined to address the State's objection that requiring the State "to differentiate between multiple acts would make it impossible to prosecute sexual abuse cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts." Id. at 157 n.8. The Court found that such a hypothetical was not before it, as both victims provided details of multiple sexual acts that were committed at different times in distinguishable locations. Id. We now confront a factual scenario precariously close to the hypothetical proffered in Celis-Garcia.

## II. A Multiple-Acts Case

■ As noted by our colleagues in the Western District, the unanimity requirement in multiple-act cases recently has been addressed in cases where the charged criminal conduct involved repeated instances of sexual abuse against minor victims. State v. Escobar, WD79163, 523 S.W.3d 545, 549, 2017 WL 2644090, at *3 (Mo. App. W.D. Jun. 20, 2017) (citing Hoeber v. State, 488 S.W.3d 648, 653 (Mo. banc 2016); Celis-Garcia, 344 S.W.3d at 155). This particular issue is often associated with cases of sexual abuse against children given the challenges presented to young children, who are asked to recall the specific dates of abuse over a period of time, often long after the abuse has occurred. Id. To address this reality, defendants sometimes are charged with committing the alleged criminal conduct in fairly generic terms over a certain timeframe. Charging a defendant with repeated instances of the identical criminal conduct within the same timeframe substantially increases the possibility that a jury may convict based on different underlying acts, and correspondingly creates a danger that a jury, in finding the defendant guilty, has

done so without unanimously agreeing on a specific instance of criminal conduct. Id.

Carlton submits that the matter before us constitutes a multiple-acts case because the record evidences separate and multiple instances of abuse. Because the State presented a multiple-acts case, Carlton maintains that the State was required to comply with Celis-Garcia by either (1) electing the particular criminal act on which it relied to support the charge or (2) by specifically describing, in the verdict director, the separate criminal acts presented to the jury and instructing the jury that it must agree unanimously that at least one of those acts occurred.

The State counters that the scenario before us is not a multiple-acts case because the record reveals an undifferentiated series of acts in which the trier of fact has no evidence allowing it to distinguish between the acts that Victim said occurred. The State posits that a multiple-acts case arises only when evidence is presented of multiple criminal acts that are *factually distinguishable*. We do not accept the State's characterization of a multiple-acts case.

A multiple-acts case occurs "when the verdict director generally lists the elements of the offense, and those elements could be satisfied by differing and distinct acts of the defendant introduced into evidence." State v. Rycraw, 507 S.W.3d 47, 60 (Mo. App. E.D. 2016). Contrary to the State's argument, the determining factor in deciding whether there is evidence of differing and distinct criminal acts is not the quality of the testimony or evidence in the record, but the nature of the criminal conduct itself. State v. Escobar, 523 S.W.3d at 549 n.3, 2017 WL 2644090, at *3 n.3. Each allegation of the repeated, although similar, abuse "is unconnected to the last and is not like a course of conduct in which multiple acts

could not be distinguished." Id.; see also State v. Watson, 407 S.W.3d 180, 184-85 (Mo. App. E.D. 2013) (holding that a multiple-acts case occurred when the victim described a "routine" of similar criminal acts, the victim did not distinguish between each specific act in her testimony, and the acts occurred multiple times). Accordingly, each commission of the improper genital-to-hand touching, regardless how similar, constituted an independent and separate act of first-degree child molestation. See Escobar, 523 S.W.3d at 550–51, 2017 WL 2644090, at *4-5; cf. State v. Edwards, 365 S.W.3d 240, 247 (Mo. App. W.D. 2012) (noting that each allegation of the prohibited contact constituted deviate sexual intercourse, and "therefore, each could have served as a basis for the criminal charge of sodomy.").

Because each incident of improper touching in the record constituted a *distinct* criminal act, Carlton allegedly committed multiple acts, each of which could constitute the charged crimes under the child-molestation verdict directors, Victim stated in her CAC interviews that the touching occurred "many, many times" and that it started when she was five or six and ended when she was seven. Moreover, the record contains evidence that would allow a jury to differentiate between the various acts alleged. In her first interview, Victim explained that the abuse occurred in the mornings while she waited for the school bus. But, Victim also described abuse occurring when she arrived at Carlton's apartment *at other times to play with his young daughter.* This alleged regular abuse did not occur at one time, but over a period time. Each new improper touching was instigated by a fresh criminal impulse.

The State's position at trial also belies the position it now takes on appeal. The State argued in closing that Victim "remembers it happened a bunch of times"

and that Victim said that it occurred "several times." The State contended that the abuse regularly occurred and was not an isolated event. See State v. Drake, 514 S.W.3d 633, 640 (Mo. App. W.D. 2017) (classifying a case as containing multiple acts after the State's closing argument contended that "the reason there [were] two counts of Statutory Sodomy is '[b]ecause she's told you it happened multiple times and it happened more than once, more than she can count.' "). Accordingly, we reject the State's assertion that, because the purported acts of abuse were similar in nature, it did not prosecute a multiple-acts case.

## III. The Child-Molestation Verdict Directors Were Plainly Erroneous

Although the State prosecuted a multiple-acts case, the factual scenario presented here is that of a minor subjected to repeated acts of sexual abuse committed in largely the same manner and location. As noted above, the Supreme Court in Celis-Garcia declined to address the scenario of identical acts of abuse committed in the same manner and place over a period of time. 344 S.W.3d at 157 n.8. While the Supreme Court did not specifically consider this issue, a defendant's constitutional right to a unanimous jury verdict is inviolate and requires a jury to reach a unanimous consensus on the defendant's criminal acts. See Watson, 407 S.W.3d at 186. Without any modification to the verdict-directing instructions presented to the jury, Carlton's right to a unanimous verdict was violated given the admission of evidence that Carlton committed many separate, albeit similar, acts of child moles-

tation. Evidence of each act alone was sufficient to support a conviction on one of the two charged counts. See id.; Escobar, 523 S.W.3d at 549 n.3, 2017 WL 2644090, at *3 n.3 (stating that a multiple-acts case "requires, as set forth in the body of the opinion, measures to ensure that the jury in convicting the defendant has done so unanimously agreeing on **same underlying criminal act**.") (emphasis added).

Despite the evidence of numerous alleged acts of child molestation, the verdict directors did not comply with the dictates of Celis-Garcia in that they were not modified in a manner to ensure that the jury unanimously based its convictions on the same underlying criminal acts. The plain language of the child-molestation verdict directors simply do not differentiate Count I from Count II.

The verdict directors did not caution the jury that they must unanimously agree on the specific acts committed by Carlton to support a conviction on either count. The verdict directors erroneously fail to identify any distinguishing characteristics from which jurors would reasonably differentiate between the act upon which they relied to convict Carlton on Count I, and the separate act which supported Carlton's conviction on Count II. The verdict directors might have identified distinctions in the record focusing on the first and last incident, the different timing of the two counts, victim's specific memories tied to each particular count, the distinguishable contexts in which the abuse occurred, or the specific instances of direct penis-to-hand touching.[4]

4. The State contends that the jury need not agree on any one of the potential distinguishing factors surrounding the context of the abuse, citing State v. Kelso, 391 S.W.3d 515, 520 (Mo. App. W.D. 2013) (stating that "[o]f course, the only acts upon which the jury

must unanimously agree are the facts necessary to constitute the crime.... Thus, it is irrelevant whether the jurors unanimously agree as to a fact non-essential to the commission of the crime."). However, the distinguishing factors pertaining to Victim's differ-

We acutely recognize the challenges presented to the State in prosecuting charges of sexual abuse when the victims are young. These difficulties are significantly exacerbated when the abuse occurs in the same manner and location over a period of time. Young victims may experience difficulty drawing out distinct and necessarily idiosyncratic instances of abuse. Indeed much (but not all) of the victim's testimony in this case about the acts of abuse was indistinguishable—the same acts—the same time of day—in the same place. Despite these challenges, a defendant's constitutional right to a unanimous jury verdict on each count is paramount and cannot be discarded because of the difficulty in modifying the jury instructions to ensure a unanimous verdict. We cannot and do not condone the trial court's submission of *identical* verdict directors on two counts without including the necessary language to ensure that the jurors unanimously agreed upon the act Carlton committed to support each separate conviction.[5]

That being said, we are empathetic to the plight of the litigants and trial courts who, having been charged with ensuring a defendant's guarantee of a unanimous verdict is embodied in the jury instructions, are left with minimal guidance when the hypothetical scenario of indistinguishable acts of abuse opined by the State in Celis-Garcia become the nightmarish reality for some innocent child. While we recognize that a verdict-directing instruction ensuring unanimity may require modification to address the individual facts of each case, it

is incumbent upon us to provide guidance to the litigants and trial courts should the multiple acts of abuse be truly indistinguishable. As properly acknowledged in Celis-Garcia, our guidance is limited to the facts of the case before us—and we will not engage in hypothetical analyses. As this Court has previously stated:

> [T]he Missouri Supreme Court approved revisions to the Notes on Use for the MAI applicable to a principal offense in order to address issues arising after Celis-Garcia. *See* MAI-CR 3d 304.02, Note 7 (effective July 1, 2013). Note 7 states that "[t]here are two options when there are distinct criminal acts" based on Celis-Garcia. *The Note continues, however, "[i]n a case consisting of evidence of the same repeated criminal act, ... [i]t is unclear whether the standard verdict directing instruction must be modified ... to ensure a unanimous verdict." MAI-CR 3d 304.02, Note 7 (quoting* Celis-Garcia, *344 S.W.3d at 157 n.8).*

Watson, 407 S.W.3d at 185 (emphasis added).

So, exactly how must a verdict director be modified to ensure a defendant's constitutional right to a unanimous verdict is respected in cases of truly indistinguishable acts of abuse? Currently, we leave it to individual litigants and trial court to decide "*whether the standard verdict directing instruction must be modified ... to ensure a unanimous verdict*" and if so, how the instruction shall be modified. When the facts of the abuse can be distin-

___

ent sexual encounters at Carlton's apartment represent separate and distinguishable occurrences of abuse. Therefore, although the jury need not agree on, for example, why Victim went to Carlton's apartment, the jury had to agree unanimously on the same underlying instances of abuse.

**5.** We also cannot condone use of lesser-included instructions in a manner where such instructions do not necessarily refer to the same specific acts as the greater-included offense, as there were many instances of alleged child molestation that did not occur at the same time as the purported acts of statutory sodomy.

guished—no matter how slightly—the Notes on Use provide useful guidance to the litigants and the trial court to focus on those factual distinctions. Since Celis-Garcia, our appellate courts have chronicled jury instructions which have not met the constitutional unanimity requirements,[6] and those instructions that have.[7] Sometimes we have found jury instructions that fail to ensure unanimity, but have found no plain error or manifest injustice because the record otherwise provided the necessary assurance that the jurors indeed were unanimous in finding the act or acts which formed the basis of the conviction.[8]

■■■■■ We are reminded that "to comply with the constitutional mandate that the jury reach a unanimous verdict, the verdict director not only must describe the separate criminal acts with specificity, but the court also must instruct the jury to agree unanimously on at least one of the specific criminal acts described in the verdict director. *To the extent MAI-CR and its notes on use conflict with this substantive law, they are not binding. Procedural rules adopted by MAI cannot change the substantive law and must therefore be interpreted in the light of existing statutory and case law.*" Celis-Garcia, 344 S.W.3d at 158 (internal citations and quotation marks omitted) (emphasis added). For those cases where the acts of abuse are truly indistinguishable, we strongly urge that the guidelines for jurors to unanimously agree upon the individual and particular acts forming the basis of the charged crimes be set forth in a model uniform instruction. The modified verdict director in State v. Watson, 407 S.W.3d 180 (Mo. App. E.D. 2013) may serve as an example. Other states faced with the same challenge have chosen other options.[9]

6. See Hoeber v. State, 488 S.W.3d 648, 658 (Mo. banc 2016) (where evidence of multiple acts of abuse was introduced at trial and emphasized by the State, the non-specific verdict directors created a real risk that the jurors did not unanimously agree as to the acts for which they found defendant guilty); State v. Rycraw, 507 S.W.3d 47, 65 (Mo. App. E.D. 2016), reh'g and/or transfer denied (Nov. 7, 2016), transfer denied (Jan. 31, 2017) (holding that without greater specificity in the verdict directing instructions as mandated by Celis-Garcia, the court could not confirm if the jury unanimously agreed upon which of the three acts provided the basis for the two convictions rendered under the verdict director).

7. See State v. Watson, 512 S.W.3d 94, 97 (Mo. App. W.D. 2017) (the State took sufficient steps to avoid violating defendant's right to a unanimous jury verdict by electing to submit a particular act to support the charge of statutory sodomy); State v. Watson, 407 S.W.3d 180, 185 (Mo. App. E.D. 2013) (where victim did not distinguish between the acts of abuse which occurred multiple times in two locations, a modified verdict director falling outside of the two modifications suggested in Celis-Garcia and MAI-CR 3d 304.02, Note 7 met the constitutional requirements of unanimity because the modified verdict director specifically stated that the jurors must "unanimously agree as to which act has been proved.").

8. See State v. Escobar, WD79163, 523 S.W.3d 545, 551–52, 2017 WL 2644090, at *5-6 (Mo. App. W.D. Jun. 20, 2017) (although the verdict directors did not assure a unanimous verdict, no manifest injustice occurred where the record shows the State focused at trial and in closing argument on specific instances of abuse); State v. Ralston, 400 S.W.3d 511, 522-23 (Mo. App. S.D. 2013); Barmettler v. State, 399 S.W.3d 523, 528, 530 (Mo. App. E.D. 2013).

9. When the State is unable to distinguish adequately between the acts charged in the separate verdict directors, some jurisdictions permit a modified unanimity instruction. See People v. Jones, 51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643, 658 (1990). The Jones court proposed that when there is no reasonable likelihood of juror disagreement as to the alleged individual acts charged by the State— the only question is whether or not the defendant in fact committed all of them—the jury

Here, the verdict directors as submitted allowed each member of the jury, independently from each other, to select two acts of child molestation, out of many acts in evidence, to convict Carlton on Counts I and II. The verdict-director did not require the jurors to settle upon which individual act supported the conviction; they needed only to find that Carlton committed two acts at sometime over an extended period. Accordingly, the child-molestation verdict directors did not ensure that the jury unanimously agreed upon two separate underlying acts for the two convictions. Because the identical instructions lacked the requisite specificity and did not otherwise ensure that the jury unanimously agreed on any given specific acts, the verdict directors for Counts I and II were, on their face, plainly erroneous. See Escobar, 523 S.W.3d at 551, 2017 WL 2644090, at *5; Drake, 514 S.W.3d at 640.

## IV. Manifest Injustice

■ Having found plain error affecting Carlton's substantial rights, we proceed to the second step of our plain-error review and determine whether plain error actually resulted in manifest injustice. "For instructional error to constitute plain error, the defendant must demonstrate the trial court 'so misdirected or failed to instruct the jury that the error affected the jury's verdict.'" Celis-Garcia, 344 S.W.3d at 154 (quoting State v. Dorsey, 318 S.W.3d 648, 652 (Mo. banc 2010)). The question is, then, "whether the error affected the ver-

dict." Escobar, 523 S.W.3d at 551, 2017 WL 2644090, at *5.

■ In reviewing the record, we are unable to discern with any degree of certainty whether the jury unanimously agreed upon the same two acts to support Carlton's convictions for child molestation. In closing argument, the State represented to the jury that:

So the two counts read exactly the same.... Now, before we get into that, I want to tell you the difference between Count I and Count II. And that difference is you find that the act occurred more than once. In other words that it occurred a second time. Just a second time. [Victim] said that it occurred several times and she said on several occasions.

Rather than correctly informing the jury that it must unanimously agree upon the same first act and the same second act, the State asked the jury to find that *any act* fitting within the set of instructions on Count I to have occurred and then to find that *any second act* fitting within the set of identical instructions on Count II to have occurred. As in Hoeber v. State, 488 S.W.3d at 656, the State's case was not limited to or focused on any two particular incidents of abuse. Instead, the State argued that multiple acts of abuse had occurred several times on several occasions. The State made no attempt in closing argument to tie the statutory-sodomy charges, and the corresponding lesser-in-

---

should be given a modified unanimity instruction. Id. 270 Cal.Rptr. 611, 792 P.2d at 658-59. The modified unanimity instruction informs the jury that it can convict the defendant on the charged counts if it unanimously agrees that the defendant committed *all* of the criminal acts described by the victim. Id. This instruction solves the multiple-acts dilemma in cases involving indistinguishable, yet repeated, instances of abuse because if the jury believes that the defendant committed all of

the criminal acts alleged by the victim, it necessarily believes that the defendant committed each specific underlying act. Id. 270 Cal.Rptr. 611, 792 P.2d at 659. Other jurisdictions have adopted this approach. See, e.g., State v. Qualls, 482 S.W.3d 1, 17 (Tenn. 2016); Baker v. State, 948 N.E.2d 1169, 1177 (Ind. 2011); State v. Muhm, 775 N.W.2d 508, 519 (S.D. 2009); Thomas v. People, 803 P.2d 144, 153-54 (Colo. 1990). But see Brown v. State, 817 P.2d 429, 439 (Wyo. 1991).

cluded offenses of child molestation, to any specific act or acts in order to make it clear to the jury what each count represented. See Drake, 514 S.W.3d at 640 (finding manifest injustice by failing to identify the separate charged instances of statutory sodomy by location or time); cf. Escobar, 523 S.W.3d at 551–52, 2017 WL 2644090, at *5-6 (finding no manifest injustice when the State clearly explained in closing argument that Count I corresponded to the first incident of child molestation that the victim remembered, whereas Count II corresponded to the last incident of child molestation identified by the victim). Nor did the verdict directors here contain language similar to that used in the modified verdict-director at issue and approved by this Court in State v. Watson, 407 S.W.3d at 186, wherein the jury was instructed that they must unanimously agree as to which act has been proved in order to convict the defendant.

The State failed to offer the jury any such distinctions in closing argument, arguing only that Victim "remembers it happened a bunch of times, or several times, as she said when she was on the stand." The State continued, "Sometimes he put her hand over the shorts, sometimes he put her hand under the shorts and made her rub his private parts." Instead of recognizing the requirements of Celis-Garcia by either accentuating the individual characteristics of the differing incidents of abuse, or otherwise providing an instruction ensuring that the jury unanimously agree on the same underlying act to convict, the State simply asked the members of the jury to survey the evidence and, for each count, select some instance of abuse to support a conviction on two indistinguishable verdict directors.

It is possible that some jurors may have credited Victim's trial testimony that the abuse regularly occurred in the mornings while Victim and Carlton waited for the school bus and rejected Victim's equivocal testimony that the abuse occurred at other times. Other jurors may have disbelieved that the abuse happened in the mornings while waiting for the school bus, instead crediting Carlton's testimony of his normal morning routine, his testimony that his wife was often present caring for their infant daughter, and the fact that Victim's brother never saw anything inappropriate. These jurors instead may have believed that the abuse only happened on other occasions when the Victim was at Carlton's apartment to play with his young daughter while his wife was at work. The verdict director, as drafted and submitted, could have allowed Carlton to be convicted on both counts despite the lack of a consensus on the underlying incidents of child molestation.

We cannot pretend to know what occurred in the jury room. However, the overly generalized and identical verdict directors, lacking in any admonition that their unanimity on the specific acts committed was required, did not ensure that the jurors were properly instructed before their deliberation. To the contrary, the verdict directors allowed each individual juror to select any, all, or only one act of abuse from the larger pool of alleged criminal acts presented by the State. The jurors could select specific instances from the alleged criminal acts, independently from each other, as their basis for returning convictions on two counts of first-degree child molestation. Accordingly, the plainly erroneous verdict directors created a juror free-for-all that resulted in manifest injustice by negating Carlton's constitutional right to a unanimous jury verdict. Carlton's point is granted.

### Conclusion

The judgment of the trial court is reversed, and the case is remanded for a new trial.

878878878878878878

Robert G. Dowd, Jr., P.J., concurs.

Sherri B. Sullivan, J., concurs.