

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,         )         *Opinion issued June 13, 2023*
                      )
                      )
        Respondent,       )
                      )
v.                          )         No. SC99554
                      )
JOHN A. HAMBY,          )
                      )
        Appellant.        )

## APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
### The Honorable Daniel Pelikan, Judge

John Hamby appeals his judgment of conviction after a jury found him guilty of two counts of first-degree statutory sodomy, one count of incest, one count of first-degree child molestation, and one count of first-degree attempted rape. Hamby contends the circuit court's instructions to the jury violated his constitutional right to a unanimous verdict. Specifically, Hamby claims the evidence presented at trial included multiple allegations of abuse related to each count of sexual misconduct and the jury instructions failed to specifically describe any one of these separate incidents to ensure the jury unanimously agreed to the same misconduct for each count of abuse. Although multiple acts of abuse

were alleged during Hamby's trial, the nature of the evidence abated any risk that the jury did not substantially agree to the same act or acts described in the jury instructions to support the verdicts. The circuit court's jury instructions, therefore, did not violate Hamby's constitutional right to a unanimous verdict. This Court affirms Hamby's judgment of conviction.

### Factual Background and Procedural History

Hamby's criminal convictions arise out of sexual abuse perpetrated against H.D., Hamby's 10-year-old stepdaughter. H.D. first disclosed this abuse to a friend, another minor child. H.D. told her friend Hamby "would come into her room while she was sleeping and then do things to her that she didn't like." H.D. told the friend this happened in the middle of the night and sometimes she woke up or pretended to be asleep, but most of the time she was not awake.

H.D. next disclosed to her mother. On April 29, 2019, H.D. told her mother that sometimes Hamby came into her room at night and would "take his bladder and touch her bladder." When asked to explain, H.D. told her mother that Hamby "touched [her] bladder with his bladder" and with his mouth. H.D. also recounted Hamby coming into her room in the middle of the night and waking her up.

The next day H.D.'s mother took her to the hospital, where H.D. spoke with a social worker. H.D. told the social worker that Hamby "touched her private part," which she indicated was her vagina. H.D. said "when she is asleep at night her stepfather would come into her room and put his front private in her private and that it would hurt." H.D. also said Hamby "put his mouth on her front private." She said she would "pretend to be asleep and

2

roll over to stop it from happening … but that did not work." H.D. communicated "it happened approximately five to six times since the New Year's Eve party."

After leaving the hospital, H.D.'s mother took her to the Children's Advocacy Center for a forensic interview. During the interview, H.D. said Hamby would come into her room at night and do "bad things" to her. She explained Hamby touched her "bladder" with his "bladder" more than one time, referring to her vaginal area and Hamby's genitals. H.D. said Hamby's bladder touched the inside and outside of her bladder. H.D. also disclosed to the interviewer that Hamby touched her bladder with his mouth. She said that the inside of his mouth touched her bladder and that this happened more than once. H.D. also generally recounted some varying circumstances during the different instances of abuse, including the state of her and Hamby's clothes, the sound of a fan, and their body positions.

H.D. also told the interviewer that this type of encounter with Hamby occurred once on the couch in the basement. She recalled having a sleepover with her sister and a friend, when Hamby did the "things he does every other time" while the other girls slept. The interviewer asked, "and when you say 'those things that he's done every other time' are those the things that you were talking about with your bladder and his bladder?" H.D. responded "mhm" and nodded affirmatively. H.D. said her sister and friend were asleep on the couch when this occurred. H.D. also recounted her legs were off the couch, and Hamby was also off the couch. H.D. remembered her pajamas stayed on. H.D. then indicated she did not remember what happened and did not know what Hamby did. When the interviewer prompted H.D. with her earlier statement that Hamby did the same thing

3

that he did the other times, H.D. said she did not remember or want to talk about it. H.D. later clarified she did not know what Hamby did or which part of Hamby's body touched her.

Based on H.D.'s disclosures, the State charged Hamby with two counts of first-degree statutory sodomy alleging mouth-to-genital contact with H.D.; one count of incest alleging mouth-to-genital contact with H.D., his step-daughter; one count of first-degree child molestation alleging genital-to-genital contact with H.D.; and one count of first-degree attempted rape alleging genital-to-genital contact with H.D. All the charges allege Hamby committed these offenses between December 1, 2018, and April 25, 2019.

The case proceeded to a jury trial. During the trial, the State requested the circuit court instruct the jury regarding the five charged offenses with the following verdict directors:

INSTRUCTION NO. 8

As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between December 1, 2018, and April 25, 2019, in the State of Missouri, the defendant knowingly had deviate sexual intercourse with H.D. by placing his mouth on her genitals, separate and distinct from Count 2, and

Second, that at the time H.D. was a child less than twelve years old,

then you will find the defendant guilty under Count 1 of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

INSTRUCTION NO. 9

As to Count 2, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between December 1, 2018, and April 25, 2019, in the State of Missouri, the defendant knowingly had deviate sexual intercourse with H.D. by placing his mouth on her genitals, separate and distinct from Count 1, and

Second, that at the time H.D. was a child less than twelve years old,

then you will find the defendant guilty under Count 2 of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

INSTRUCTION NO. 10

As to Count 3, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between December 1, 2018, and April 25, 2019, in the State of Missouri, the defendant engaged in deviate sexual intercourse with H.D. by placing his mouth on her genitals, and

Second, that H.D. was a stepchild of defendant by virtue of a marriage creating that relationship and which still existed at the time referred to in paragraph First, and

Third, that defendant knew H.D. was his stepchild at the time referred to in paragraph First,

then you will find the defendant guilty under Count 3 of incest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

INSTRUCTION NO. 11

As to Count 4, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between December 1, 2018, and April 25, 2019, in the State of Missouri, the defendant touched H.D.'s genitals with his genitals, separate and distinct from Count 5, and

Second, that defendant did so for the purpose of arousing or gratifying defendant's sexual desire, and

Third, that H.D. was a child less than twelve years of age,

5

Fourth, that H.D. was defendant's stepchild by virtue of a marriage creating that relationship and which still existed at the time referred to in Paragraph First,

Fifth, that defendant knew H.D. was his stepchild at the time referred to in paragraph First,

then you will find the defendant guilty under Count 4 of child molestation in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

INSTRUCTION NO. 12

As to Count 5, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between December 1, 2018, and April 25, 2019, in the State of Missouri, the defendant touched H.D.'s genitals with his genitals, separate and distinct from Count 4, and

Second, that H.D. was a child less than twelve years of age, and

Third, that such conduct was a substantial step toward the commission of the offense of rape in the first degree, and

Fourth, that defendant engaged in such conduct for the purpose of committing such rape in the first degree,

then you will find the defendant guilty under Count 5 of attempted rape in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the offense of rape in the first degree if he or she knowingly has sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion.

As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of rape in the first degree.

Hamby objected to giving the State's proffered instructions. The circuit court overruled Hamby's objection and submitted the instructions to the jury. The jury found Hamby guilty on each count. Hamby appeals his convictions.[1]

**Analysis**

Hamby raises five points on appeal, each claiming a separate verdict director violated his constitutional right to a unanimous jury verdict.[2] He contends the evidence at trial revealed three separate, distinct acts of mouth-to-genital and genital-to-genital abuse: (1) mouth-to-genital and genital-to-genital contact while H.D. was asleep in her bedroom, (2) mouth-to-genital and genital-to-genital contact while H.D. was awake in her bedroom, and (3) mouth-to-genital and genital-to-genital contact while H.D. was in the basement. Because the verdict directors failed to specify among these three alleged distinct acts of abuse, Hamby argues it is unclear of which of the three incidents the jury found him guilty. He concludes the circuit court violated his constitutional right to a unanimous verdict and

---

[1] This Court has jurisdiction over Hamby's appeal pursuant to article V, section 10 of the Missouri Constitution.

[2] Each of the five points Hamby raises in this appeal allege the respective instructions were defective and violated his constitutional right to a unanimous verdict. Hamby alleges in his first and second points that Instruction Nos. 8 and 9 were defective because the verdict directors did not specify distinct acts of mouth-to-genital contact to support the statutory sodomy charges. In his third point, Hamby similarly argues Instruction No. 10 was insufficient because it did not specify which act of mouth-to-genital contact supported the incest charge. Hamby argues in his fourth and fifth points that Instruction Nos. 11 and 12 failed to specify which incidents of genital-to-genital contact supported the child molestation and attempted rape charges. He argues the jury instructions failed to guarantee a unanimous verdict by merely specifying in Instruction Nos. 8, 9, 11, and 12 that the conduct described in those instructions be "separate and distinct" from the conduct described in another instruction. Because the arguments raised in each point are substantially the same, this Court addresses them together.

7

this Court should vacate his convictions.

## I. Preservation

The State contends Hamby failed to preserve his jury unanimity claims for appellate review. It argues Hamby objected to the instructions too generally to provide the circuit court adequate notice or an opportunity to correct the instructions before submitting the case to the jury. The State, therefore, suggests this Court apply plain error review.

The State's position is justified. At trial, Hamby timely objected to the verdict directors for all five of the charged counts, arguing "the verdict directors lack[ed] specificity as to the alleged crimes committed."[3] He cited *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), and Missouri Approved Instruction Notes on Use 6 and 7, all of which address jury unanimity in cases involving multiple, separate acts that could establish a single charged offense. Hamby requested that the verdict directors include details that "would consist of a narrower time frame, the location, maybe more details about which offense the State is referring to."

Although Hamby clearly set forth the grounds for his objection, he did not identify the specific details in the evidence he believed distinguished one act of abuse from another that should have been included in the instructions to resolve his jury unanimity concern. On appeal, however, Hamby alleges for the first time three distinct acts based on the location of the abuse, the basement and the bedroom, and H.D.'s state of wakefulness.

---

[3] Similarly, in his motion for new trial, Hamby argued the court erred in submitting the verdict directors because the instructions "did not require the jury to agree on a specific act of misconduct" and "failed to instruct the jury that it must agree unanimously that all of the acts described in" the instructions occurred.

8

Because he did not specify these distinct acts in his objection, the circuit court was left to guess what, if any, evidence distinguished the alleged acts of abuse and should have been included in the instructions to resolve Hamby's jury unanimity objection.

Child sexual abuse cases frequently involve allegations of repeated abuse occurring over a span of time described in a vague and generalized manner by a young child who is unable to specify or distinguish in a meaningful way when, where, and how each act of abuse occurred. In these types of cases, it places a high burden on the circuit court to determine what distinguishing facts, if any, should be included in the instructions to resolve a general objection to a jury instruction based on jury unanimity. Nonetheless, the Court will presume for purposes of its review that Hamby properly preserved the issues raised in his appeal because his claims on appeal fail regardless of this Court's preservation finding.[4]

## II. Standard of Review

"Whether a jury was instructed properly is a question of law this Court reviews *de novo*." *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 159 (Mo. banc 2012). "When reviewing claims of instructional error, this Court will reverse the circuit court's decision only if the instructional error misled the jury and, thereby, prejudiced the defendant." *Zetina-Torres*, 482 S.W.3d at 810. To establish prejudice based on a jury unanimity challenge, "[a] defendant need not establish that the jury was more likely than not to have misapplied the instruction. It is sufficient that there is a 'reasonable likelihood that the jury

---

[4] Plain error review is discretionary and requires a showing of evident, obvious, and clear error resulting in a miscarriage of justice. *State v. Brandolese*, 601 S.W.3d 519, 531 (Mo. banc 2020). Preserved instructional error, on the other hand, merely requires establishing error resulting in prejudice. *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016).

has misapplied the challenged instruction' in a way which violates the defendant's constitutional rights." *State v. Rycraw*, 507 S.W.3d 47, 59 (Mo. App. 2016) (quoting *State v. Erwin*, 848 S.W.2d 476, 483 (Mo. banc 1993) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).[5]

## III. Jury Unanimity

Hamby argues the circuit court violated his right to a unanimous verdict because the jury instructions failed to differentiate between multiple acts of abuse, specifically arguing the circuit court should have included details regarding H.D.'s state of wakefulness and the location of the abuse in the jury instructions.

---

[5] As cited here, the court of appeals in *Rycraw* relied on this Court's opinion in *Erwin* to set forth the standard of review in a jury unanimity case. *Rycraw*, 507 S.W.3d at 59. In *Erwin*, the Court applied the "reasonable likelihood" standard in the context of analyzing a due process violation resulting from an alleged instructional error, quoting the United States Supreme Court in *Boyde v. California*. *Erwin*, 848 S.W.2d at 483-84. The Supreme Court in *Boyde* also found the "reasonable likelihood" standard was the appropriate standard to review an alleged due process violation resulting from instructional error when the challenged instruction was alleged to be ambiguous and subject to erroneous interpretation. 494 U.S. at 380. The Supreme Court found applying the "reasonable likelihood" standard was proper because this standard "better accommodates the concerns of finality and accuracy than does a standard which makes the inquiry dependent on how a single hypothetical 'reasonable' juror could or might have interpreted the instruction." *Id.* The Supreme Court noted,

> Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* at 380-81. Although this "reasonable likelihood" standard of review did not specifically arise out of a case alleging a violation of the right to a unanimous verdict in either *Erwin* or *Boyde*, this standard adequately and appropriately addresses due process concerns. For this reason, this standard, as articulated by the court of appeals in *Rycraw*, is properly relied on by Hamby, the State, and this Court to address the constitutional violation alleged in this appeal.

*A. Legal Background*

The Missouri and United States constitutions require juries to deliberate and arrive at a unanimous verdict to find the accused guilty of a felony criminal offense. Mo. Const. art. I, sec. 22(a); U.S. Const. amend. VI; *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). As articulated by this Court in *Celis-Garcia*, a unanimous verdict requires "**substantial agreement**" among jurors "as to the defendant's acts, as a preliminary step to determining guilt." 344 S.W.3d at 155 (emphasis added). A defendant's constitutional right to a unanimous verdict may be jeopardized in cases involving "multiple acts" of criminal conduct because jurors could base their verdict on differing conduct. *Id.* at 155-56. "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id.*

The facts of *Celis-Garcia* set forth a textbook example of a unanimous verdict violation in a multiple acts case. In *Celis-Garcia*, the evidence clearly and distinctly described "at least seven separate acts of statutory sodomy that occurred at different times … and in different locations" involving two sisters. *Id.* at 156. Specifically, the evidence revealed the defendant and her boyfriend touched one of the sister's genitals in an enclosed back porch. *Id*. at 152, 153. The victim "testified that [the defendant] and her boyfriend took her to the porch, removed her pants, and began touching her breasts, vagina, and buttocks with their hands." *Id.* at 153. A few days later, the defendant and boyfriend abused the child in a bedroom. *Id.* The victim testified the defendant and boyfriend "removed her clothes, restrained her hands and feet with handcuffs, and hung her on the

bedroom wall by attaching the handcuffs to a rod or hook." *Id.* The defendant and her boyfriend then touched the victim's genitals with their hands. *Id.* During a third encounter, the sisters were taking a shower and the defendant and her boyfriend "entered the bathroom, removed the two girls from the shower, and took them to the back porch" where the defendant and boyfriend "began touching both girls' private areas with their hands." *Id.* The victim also testified to one incident of the defendant and boyfriend touching her genitals in the defendant's bedroom and another that took place in a shed. *Id.* Finally, the sisters testified about an incident when the defendant and boyfriend made hand-to-genital contact with one or both of the girls in the bathroom. *Id.* For each of these acts, the sisters described the location in which the abuse occurred, the persons present, the type of conduct the defendant committed, and often other specific details, including whether articles of clothing were removed, whether they were restrained, and whether someone else witnessed or was involved in the abuse. *Id.*

Despite the specific and distinct descriptions of how each of the seven acts of abuse occurred, the defendant in *Celis-Garcia* was charged with one offense for each victim, and the challenged instructions generally instructed the jury to determine if the defendant or her boyfriend placed their hands on the victims' genitals on or between certain dates. *Id.* at 152, 154-55. The jury unanimously answered in the affirmative and returned guilty verdicts against the defendant. *Id.* at 154.

The evidence presented in *Celis-Garcia* involved multiple, distinct incidents in which the charged conduct occurred, which created the jury unanimity issue identified by this Court. *Id.* 155-56. Because the verdict directors failed to differentiate between the

12

multiple distinct acts of abuse, the instructions allowed the jury to find the defendant guilty without substantially agreeing to the same acts. *Id.* at 158. For this reason, the Court found the instructions violated the defendant's right to a unanimous verdict. *Id.* To cure jury unanimity concerns arising in multiple act cases like *Celis-Garcia*, the Court observed the jury instructions should specifically describe the separate criminal acts presented in the evidence and instruct the jury it must unanimously agree that at least one of those acts occurred.[6] *Id.* at 157. The Court made clear, however, it was not addressing the factual scenario involving "repeated, identical sexual acts committed at the same location," where the victim was "**unable to distinguish sufficiently among the acts**." *Id.* at 157 n.8 (emphasis added).

In the wake of *Celis-Garcia*, the court of appeals has addressed this factual scenario, in which a child victim discloses repeated sexual acts without sufficiently distinguishing one sexual abuse act from another to provide for distinct instances of abuse. *Hogan v. State*, 631 S.W.3d 564, 573-75 (Mo. App. 2021); *State v. Jones*, 619 S.W.3d 138, 149-52 (Mo. App. 2021); *State v. Dutcher*, 583 S.W.3d 440, 441-42 (Mo. App. 2019); *State v. Armstrong*, 560 S.W.3d 563, 572-74 (Mo. App. 2018); *State v. Walker*, 549 S.W.3d 7, 12 (Mo. App. 2018); *State v. Adams*, 571 S.W.3d 140, 150-52 (Mo. App. 2018). In these cases, the court of appeals reasoned that jury unanimity concerns did not arise because the evidence presented did not sufficiently differentiate among the repeated acts of abuse.

---

[6] The Court also found the state could address jury unanimity concerns in a multiple act case by electing in the charging document the particular criminal act on which it will rely to support the charge. *Celis-Garcia,* 344 S.W.3d at 157.

*Hogan*, 631 S.W.3d at 574 (finding testimony that defendant touched the victim "more than one time," "about, like, four," in "mom's bedroom and one time in [the victim's] bedroom" "revealed no multiple, distinct acts" of abuse); *Adams*, 571 S.W.3d at 150-51 (finding inconsistent testimony from a child victim that abuse occurred while her clothes were both on or off could not be viewed as separate and distinct instances of abuse). The court of appeals concluded the vague and generalized nature of the evidence abated any risk the jury would find the defendant guilty based on differing conduct, and courts need not instruct the jury with the specificity prescribed by *Celis-Garcia*. *Hogan*, 631 S.W.3d at 573-75; *Jones*, 619 S.W.3d at 147, 149-52; *Dutcher*, 583 S.W.3d at 441-42; *Armstrong*, 560 S.W.3d at 572-74; *Walker*, 549 S.W.3d at 12; *Adams*, 571 S.W.3d at 150-52.

The facts of *Jones* are instructive, especially when compared with the facts of *Celis-Garcia* summarized above. In *Jones*, the defendant was charged with 14 counts of various crimes, including multiple counts of first-degree statutory sodomy. 619 S.W.3d at 142. On appeal, the defendant argued, in part, that the jury instructions for three counts of first-degree statutory sodomy violated his right to a unanimous verdict. *Id.* at 146. The challenged instructions generally instructed the jury to find the defendant guilty if they found he knowingly committed the charged conduct within a certain timeframe. *Id.* at 149-50. In relation to one count, the victim testified that "sometimes" this abuse happened in the back room, sometimes in the front room, sometimes when her sister was around, sometimes when she was sitting up, and sometimes when she was lying down. *Id.* at 149. In relation to another count, the victim testified that the defendant used his mouth on her genitals "multiple times" and in "different scenarios." *Id.* at 150. Relating to a third count,

14

the victim testified this abuse occurred while they played a hiding game and took place on the side of the bed, in the bathroom, and in various places in the apartment. *Id.* For each challenged instruction, the court of appeals distinguished the facts from *Celis-Garcia*, finding the conduct was frequent and indistinguishable as the victim was unable to differentiate "a single episode" of abuse. *Id.* at 149-50.

The court of appeals' decisions in cases such as *Hogan*, *Adams*, *Dutcher*, *Armstrong*, *Walker*, and *Jones*, like this Court's holding in *Celis-Garcia*, ensure the defendant's right to a unanimous verdict. Jury unanimity concerns arise when the evidence provides for multiple, distinct criminal acts, but the defendant is charged with those acts in a single count. *Celis-Garcia*, 344 S.W.3d at 155-56. In such circumstances, a risk exists that jurors will not substantially agree to the same criminal act if they determine the offense generally described in the singular count occurred. *Id.* That risk arose in *Celis-Garcia* because each act of abuse was separately and specifically described by location, the persons present, the type of conduct the defendant committed, and often other specific details. *Id.* at 153. The nature of the evidence presented in *Hogan*, *Adams*, *Dutcher*, *Armstrong*, *Walker*, and *Jones*, however, vastly differs from the nature of the evidence presented in *Celis-Garcia*. In these court of appeals cases, evidence of multiple acts of abuse was introduced at trial, but the allegations involved repeated, indistinguishable acts of abuse over a relatively short period of time. When a victim recounts vague and generalized aspects of the alleged abuse and does not sufficiently distinguish one repeated act from another, the jury is not faced with distinct acts from which to differentiate. *See State v. Hunt*, 503 P.3d 1067, 1077 (Kan. Ct. App. 2021); *People v. Cooks*, 521 N.W.2d 275, 279

15

(Mich. 1994). The nature of such evidence abates any risk that a jury will base their verdicts on different conduct and will fail to substantially agree on their verdict. *See State v. Arculeo*, 36 P.3d 305, 314-15 (Kan. Ct. App. 2001). The right to a unanimous verdict, therefore, is not implicated when the evidence does not sufficiently distinguish between repeated acts of abuse that would allow the jury to rely upon different acts in finding guilt. *See Hunt*, 503 P.3d at 1077; *Arculeo*, 36 P.3d at, 314-15; *Cooks*, 521 N.W.2d at 279. Although the court of appeals' decisions from Missouri did not cite authority for its reasoning, its decisions are logical and consistent with other jurisdictions. *See, e.g.*, *Hogan*, 631 S.W.3d at 573-75; *Jones*, 619 S.W.3d at 147, 149-52; *Dutcher*, 583 S.W.3d at 441-42; *Armstrong*, 560 S.W.3d at 572-74; *Walker*, 549 S.W.3d at 12; *Adams*, 571 S.W.3d at 150-52; *Hunt*, 503 P.3d at 1077; *Arculeo*, 36 P.3d at 314-15; *Cooks*, 521 N.W.2d at 279.

### B. Hamby's Jury Unanimity Challenge

*Celis-Garcia* and *Hogan*, *Adams*, *Dutcher*, *Armstrong*, *Walker*, and *Jones* mark opposite ends of the spectrum for multiple acts cases, with either clear evidence of multiple distinct acts or repeated acts that cannot be sufficiently distinguished by the evidence. The nature of the evidence presented in this case falls much closer to the evidence presented in *Hogan*, *Adams*, *Dutcher*, *Armstrong*, *Walker*, and *Jones* than the evidence presented in *Celis-Garcia*.

The evidence of H.D.'s state of wakefulness during the repeated acts of abuse fails to sufficiently distinguish one act of abuse from another. The evidence at trial demonstrated Hamby abused H.D. on multiple occasions, and H.D. recalled that when the abuse occurred, she was sometimes awake, sometimes pretending to be asleep, but most of

16

the time asleep. Evidence of H.D.'s state of wakefulness is markedly different from the evidence in *Celis-Garcia*, in which the victims specifically described seven multiple, *distinct*, incidents in which the charged conduct occurred, which created a jury unanimity issue correctly identified by this Court. 344 S.W.3d at 155-56. In contrast, H.D.'s general recollection of her varying states of wakefulness during the abuse did not describe a single episode of abuse to differentiate between the repeated acts, thereby failing to establish any distinct incident of abuse.

This evidence is comparable to H.D.'s vague recollection of other general varying circumstances surrounding the abuse, including the sound of the fan and the state of Hamby's and H.D.'s clothing and body positions.[7] H.D.'s general and vague descriptions about the varying circumstances and conditions surrounding the repeated acts of abuse do not identify any specific and distinct incident of abuse. Similarly, H.D.'s recollection of her state of wakefulness generally describes the nature of her condition and circumstance when the repeated abuse occurred.

This evidence does not provide a meaningful distinction that would enable the jury, or any fact finder, to identify any particular incident or incidents when H.D. was awake, pretending to be asleep, or asleep. Rather, the evidence generally recounted how the abuse normally occurred and "would not easily allow the jury to rely upon different acts to find [Hamby] guilty of multiple acts counts." *Jones*, 619 S.W.3d at 147. Because the general nature of the evidence related to H.D.'s state of wakefulness does not create a risk that the

---

[7] Hamby does not allege any of these generally described circumstances establish distinct acts of abuse warranting specificity in the jury instructions.

jury would be unable to substantially agree to the same acts in finding guilt, omitting H.D.'s state of wakefulness from the jury instructions did not violate Hamby's right to a unanimous verdict.

H.D.'s recollection of an encounter with Hamby in the basement also does not risk the jurors' ability to substantially agree on their verdict. After disclosing repeated acts of abuse in which Hamby would come into her bedroom at night, H.D. recounted an incident in the basement during which Hamby did the "things he does every other time." When asked whether "those things that he's done every other time" included "the things that [H.D. was] talking about [in the bedroom] with [her] bladder and his bladder," H.D. responded "mhm" and nodded affirmatively. H.D. then indicated she did not remember what happened and did not know what Hamby did. When the interviewer prompted H.D. with her earlier statement that Hamby did the same things that he did the other times, H.D. said she did not remember or want to talk about it. H.D. later clarified she did not know which part of Hamby's body touched her.[8]

To the extent these comments described a separate incident, the event directly relied on and related to the acts of abuse H.D. recounted occurring in her bedroom. Evidence suggesting multiple acts is not separate and distinct if the multiplicity evidence is dependent on a previous act occurring. The concern in jury unanimity cases is that jurors will find guilt without substantially agreeing to the same underlying criminal act. *Celis-*

---

[8] H.D.'s reference to the abuse occurring in the basement was proportionally brief compared with her discussion of the abuse occurring in the bedroom. She also made these comments only once during the many disclosures she made to numerous individuals.

*Garcia*, 344 S.W.3d at 155-56.  When the only evidence suggesting multiple acts is dependent on the evidence of the other acts, this concern is abated as there is no longer a risk the jury will not substantially agree to the same acts.  *See generally* 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1879 (updated 2023) ("**A specific unanimity instruction is not necessary if the acts constituting the crime** amount to a continuous course of conduct or one transaction, or **are interrelated**, or if the evidence should be considered as a whole." (emphasis added)).

Here, the evidence suggesting sexual misconduct may have occurred in the basement was directly related to the abuse occurring in the bedroom.  H.D.'s affirmation that "those things" included Hamby's bladder-to-bladder contact did not provide for a distinct act of abuse, separate from the abuse in the bedroom, because this evidence was predicated upon the repeated abuse H.D. described occurring in the bedroom.  Accordingly, there was no risk the jury could conclude that Hamby engaged in sexual misconduct in the basement without also believing he committed misconduct in the bedroom.  While location can be a significant factor creating a distinction in the evidence, *Celis-Garcia*, 344 S.W.3d at 156, this unique factual predication in this particular case abates any risk that the jury did not substantially agree to the abuse H.D. incurred.[9]  Failing to specify the location in the instructions, therefore, did not violate Hamby's right to a unanimous verdict.

---

[9] Evidence of conduct occurring at varying locations is not dispositive of whether evidence of distinct acts exist that risk jury unanimity.  *See, e.g.*, *State v. Torres*, 658 S.W.3d 270, 276-78 (Mo. App. 2023); *State v. Gannan*, 658 S.W.3d 103, 113-14 (Mo. App. 2022); *Hogan*, 631 S.W.3d at 573-74; *State v. Alvarez*, 628 S.W.3d 400, 411-14 (Mo. App. 2021); *State v. Tabberer*, 626 S.W.3d 274, 283-85, 287-88 (Mo. App. 2021); *Jones*, 619 S.W.3d at 149-52; *State v. Brammer*, 614 S.W.3d 18, 23-26 (Mo. App. 2020).

Even if this evidence regarding the location of the abuse provided a distinct and separate act of abuse risking jury unanimity, no "reasonable likelihood" exists that the jury "misapplied the challenged instruction in a way which violates [Hamby's] constitutional rights." *Rycraw*, 507 S.W.3d at 59. As discussed above, H.D. predicated the "things" that happened in the basement on her account of the abuse that repeatedly occurred in the bedroom. Therefore, no reasonable likelihood exists that the jurors would find the abuse occurred in the basement without substantially agreeing the abuse occurred in the bedroom, and Hamby was not prejudiced.[10] For all these reasons, this Court finds the jury instructions preserved Hamby's right to a unanimous verdict, and this Court affirms Hamby's judgment of conviction.[11]

---

[10] This Court has found "the jury is free to disbelieve all or any part of the evidence." *State v. Pierce*, 433 S.W.3d 424, 430 (Mo. banc 2014); *State v. Jackson*, 433 S.W.3d 390, 404-06 (Mo. banc 2014). Because the jury is free to believe or disbelieve any evidence, Hamby contends the jury could believe he committed the act in the basement, but not the bedroom, despite the factual predication. Courts, however, must consider the evidence as presented to determine if multiple, distinct acts were adequately identified requiring specificity in the jury instructions to ensure the jury's "substantial agreement." *See Celis-Garcia*, 344 S.W.3d at 155. To conduct this review, courts must weigh and consider the evidence to determine whether the evidence sufficiently distinguishes one repeated act from another creating a risk that the jury might not substantially agree on their verdict. *Id.* at 155-56. Only then can the circuit court, or a reviewing appellate court, glean whether the evidence presented established multiple, distinct acts raising jury unanimity concerns.

[11] Although this Court finds the jury instructions did not violate Hamby's right to a unanimous verdict, had there been evidence of distinct incidents of abuse risking jury unanimity, the State's attempts to cure the alleged unanimity issue would have failed. The State attempted to cure any alleged jury unanimity issue by instructing the jury to consider the conduct "separate and distinct" from the conduct alleged in another instruction. For example, Instruction No. 8 directed the jury to find Hamby guilty of statutory sodomy in Count 1 if it believed he committed the charged conduct "separate and distinct from Count 2." Instructing on multiple act cases based on the charged counts in relation to each other **may** resolve jury unanimity concerns, but only when the factual circumstances make it so the distinctions provide enough detail to ensure the jury substantially agrees to the same

*C. Solution to Jury Unanimity Concerns*

As this case and the numerous court of appeals cases grappling with jury unanimity issues in child sexual abuse cases demonstrate, multiple acts cases have continued to confound our court system since this Court's well-reasoned decision in *Celis-Garcia*. It is incumbent on this Court, therefore, to articulate a simple and straightforward solution going forward that protects a defendant's constitutional right to a unanimous jury verdict in child sexual abuse cases.

In *Celis-Garcia*, the Court observed,

> [A] defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred.

344 S.W.3d at 157. But as this Court acknowledged in *Celis-Garcia*, these two solutions do not account for cases in which the evidence provides for repeated, indistinguishable acts, such as the one presented to the Court here. *Id.* at 157 n.8. The nature of the evidence in child sexual abuse cases, however, often involves repeated acts of abuse that cannot be sufficiently distinguished; therefore, a separate solution to address multiple act cases must be articulated.

---

underlying act. *See Rycraw*, 507 S.W.3d at 61 (finding instructing on multiple counts by specifying the chronological order of the acts caused no jury unanimity concern when the evidence was clear as to the chronology of the acts). When there are more than two separate and distinct acts specifically described in the evidence, however, merely submitting that the conduct must be "separate and distinct" from that included in another instruction fails to adequately identify any distinct act to which the jurors are to substantially agree.

Missouri caselaw suggests a third option to resolve jury unanimity concerns. In *State v. Watson*, the court of appeals found a jury instruction, providing that jurors must "unanimously agree as to which act has been proved," adequately addressed jury unanimity concerns raised in a child sexual abuse case. 407 S.W.3d 180, 183, 185-86 (Mo. App. 2013).[12] The court of appeals noted authority this Court relied on in *Celis-Garcia* "suggests that an instruction specifically telling the jury they must unanimously agree to one act, even without further specificity regarding acts in evidence, will uphold the defendant's rights in a case where multiple identical acts are alleged." *Id.* at 185-86 (citing 23A C.J.S. *Criminal Law* § 1647 (Cum. Supp. 2013)); *see also* 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1879 (updated 2023) ("[W]here the jury is presented with evidence of more than one conceptually distinct factual basis for conviction … the jury must be instructed that it may not return a guilty verdict, unless it unanimously agrees upon the commission of any one of the criminal acts."). Another noted secondary source this Court relied upon in *Celis-Garcia* also asserts that jury unanimity can be ensured in multiple acts cases through a special unanimity instruction like the one used in *Watson*.

---

[12] In its entirety, the unanimity instruction read as follows:

> The State of Missouri, County of Jefferson alleges that Defendant committed acts of Statutory Rape in the First Degree, to wit: Defendant had sexual intercourse with Victim, who was less than fourteen years old, on multiple occasions in Instruction No. 8. To convict Defendant of Statutory Rape in the First Degree, one particular act of Statutory Rape in the First Degree, to wit: having sexual intercourse with Victim, must be proven beyond a reasonable doubt, **and you must unanimously agree as to which act has been proved**. You need not unanimously agree that Defendant committed all the acts of Statutory Rape in the First Degree.

*Watson,* 407 S.W.3d at 183 (alterations omitted) (emphasis added).

75B Am. Jur. 2d *Trial* § 1447 (updated 2023) (In multiple act cases "either the state must elect the particular criminal act upon which it will rely for conviction, or the trial court should instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.").

Other jurisdictions also support utilizing a special unanimity instruction as a solution to jury unanimity concerns. Our sister states have found prosecutors can either (1) elect the specific criminal act upon which they are relying to establish the *actus reus* of the charged offense and include that specific act in the relevant verdict director, or (2) have the circuit court provide a special unanimity instruction informing the jury that, to convict on the relevant count, all jurors must agree that the defendant committed the same act. *See, e.g.*, *King v. Commonwealth*, 554 S.W.3d 343, 353 (Ky. 2018); *State v. Arceo*, 928 P.2d 843, 874-75 (Haw. 1996); *Thomas v. People*, 803 P.2d 144, 153-54 (Colo. 1990); *State v. Petrich*, 683 P.2d 173, 178 (Wash. 1984), *abrogated on other grounds by State v. Kitchen*, 756 P.2d 105, 106 (Wash. 1988); *Ngo v. State*, 175 S.W.3d 738, 748-49 (Tex. Crim. App. 2005).[13]

The approach utilized by the court of appeals in *Watson* and courts in other jurisdictions provides a preferable solution to address jury unanimity concerns – especially

---

[13] States that have adopted some version of a special multiple acts instruction include Alaska, California, Colorado, Kansas, Massachusetts, Utah, Wisconsin, and Washington. *See* AK Pattern Jury Ins. – Crim. 1.35F (2022); CALCRIM No. 3500 (2022); COLJI-Crim. E:11 (2021); PIK Crim.3d 68.09-B (2002); Mass. Crim. Model Jury Ins. 2.320 (2022); MUJI 2d CR430 (2022); WIS JI-CRIMINAL 517 (2010); WPIC 4.25 (5th ed.) (2021); WPIC 4.26 (5th ed.) (2021). The instructions used in these other jurisdictions and *Watson* might be appropriate for this Court's Committee on Procedure in Criminal Cases to consider should it decide to draft a special unanimity instruction for Missouri.

in multiple act cases, like the one here – when the repeated acts of abuse are indistinguishable. A special unanimity instruction protects the constitutional right to a unanimous verdict without requiring the court to comb through the often vague and general descriptions of child sexual abuse to identify evidence that may sufficiently distinguish one act from another requiring specificity in the verdict directors. The circuit court will protect a defendant's right to a unanimous verdict so long as the jury instructions either identify a specific distinct act **or** include the special unanimity instruction. Including a special unanimity instruction as an alternative to ensure jury unanimity provides a workable solution for multiple act cases when either the evidence establishes multiple distinct criminal acts or the evidence involves repeated, identical acts that cannot be sufficiently distinguished.

**Conclusion**

For the foregoing reasons, this Court affirms Hamby's judgment of conviction.

_____
W. Brent Powell, Judge

Wilson, C.J., Russell, Fischer and Ransom, JJ., concur;
Breckenridge, J., dissents in separate opinion filed;
Draper, J., concurs in opinion of Breckenridge, J.

24


STATE OF MISSOURI,       )
                          )
        Respondent,     )
                          )
v.                         )        No. SC99554
                          )
JOHN A. HAMBY,        )
                          )
        Appellant.       )

## DISSENTING OPINION

I respectfully dissent. In this case, the state charged John Hamby with five felonies for sexually abusing his stepdaughter, H.D. Mr. Hamby was charged in counts 1 and 2 with first-degree statutory sodomy, in count 3 with incest, in count 4 with child molestation in the first degree, and in count 5 with attempted rape in the first degree. The criminal act alleged in counts 1 through 3 was that Mr. Hamby touched H.D.'s genitals with his mouth, and the criminal act alleged in counts 4 and 5 was that Mr. Hamby touched H.D.'s genitals with his genitals.

At Mr. Hamby's jury trial on the charges, the state presented evidence that Mr. Hamby touched H.D.'s genitals with his mouth and his genitals on six or seven nights between December 1, 2018, and April 25, 2019. The evidence was that, on five or six nights, he committed the two criminal acts in H.D.'s bedroom under circumstances that

were materially indistinguishable. There was also evidence that, on one night, he committed the two criminal acts in the basement living room under factually distinct circumstances.

The jury determined Mr. Hamby's guilt of the crimes submitted in the five verdict directors after it heard evidence of multiple commissions of each of the criminal acts, any one of which could support the jury's guilty verdict on the crimes submitted. Evidence Mr. Hamby committed the criminal act of touching H.D.'s genitals with his mouth in the bedroom on any one of the five or six nights or once in the basement living room on a different night could serve as the evidentiary basis for the crime submitted in the verdict directors for counts 1 through 3. In the same way, any one of the five or six occasions Mr. Hamby touched H.D.'s genitals with his genitals in her bedroom or the one time he did so in the basement living room could serve as the evidentiary basis for convicting him of the criminal act submitted by the verdict directors for counts 4 and 5.

Although Mr. Hamby objected to the state's proffered verdict directors, the state did not elect a particular occasion the criminal act was committed to be the basis for the crime submitted in each verdict director. Nor did the circuit court ensure each verdict director described a specific occasion Mr. Hamby committed the criminal act on which the jury had to agree or otherwise instruct the jury it must unanimously agree that Mr. Hamby's committed the same criminal act.

The principal opinion finds the circuit court did not err in failing to submit verdict directors that required the jury to unanimously agree on the same criminal act to find him guilty of each crime submitted because the evidence did not sufficiently differentiate one

2

commission of the crime from another, which is required to find a violation of Mr. Hamby's right to a unanimous verdict. The principal opinion reaches that conclusion only because it fails to acknowledge the evidence of Mr. Hamby's commission of the two criminal acts in the basement living room was under factually distinct circumstances than his commission of the two criminal acts on the five or six occasions in H.D.'s bedroom – the criminal acts occurred in the basement living room rather than H.D.'s bedroom, she was on the sofa rather than in her bed when the acts were committed, and her sister and a friend were in the room with Mr. Hamby and H.D.

Because there was evidence that Mr. Hamby's commission of the two criminal acts on one occasion was factually distinct from his commission of the acts on the five or six other occasions, it was necessary that each verdict director require the jurors to unanimously agree on the same commission of the criminal act to find him guilty. Because the verdict directors did not, jurors carefully following the instructions could find Mr. Hamby guilty of the criminal acts submitted without unanimously agreeing on the same criminal act he committed. As a result, Mr. Hamby was deprived of his right to a unanimous jury verdict as guaranteed by article I, section 22(a) of the Missouri Constitution.

I further dissent because the principal opinion fails to hold Mr. Hamby preserved his claims of instructional error when he made a contemporaneous and specific objection to the verdict directors. Mr. Hamby specifically articulated he was objecting to the lack of specificity in the verdict directors because the evidence he committed the two criminal acts on multiple occasions risked non-unanimous verdicts, and he suggested distinguishing

3

facts that could be included in the instructions to remedy the error. The principal opinion's agreement with the state's assertion that such an objection may be insufficient suggests a change of the standard for objections to evidence that has far-reaching implications.

Proper application of the law to the facts requires reversal of the circuit court's judgment and remand of the case.

## Preservation

Regarding preservation, the principal opinion suggests Mr. Hamby failed to preserve his claims of instructional error for appellate review because he did not specify the distinct acts the verdict directors needed to describe with sufficient particularity. Rule 28.03 requires "specific objections to instructions or verdict forms considered erroneous" to preserve a claim of instructional error for appellate review. An objection must state "distinctly the matter objected to and the grounds of the objection. . . . The objections must also be raised in the motion for new trial . . . ." Rule 28.03.

Mr. Hamby timely objected at trial and raised in his motion for new trial his objection that the verdict directors lacked the specificity required as to the alleged crimes committed to ensure juror unanimity. He also requested the verdict directors specify a "narrower time frame, the location, maybe more details about which offense that the State is referring to." Specifically, Mr. Hamby stated:

> Defense objects to all five verdict directors on the specific basis of Missouri Approved Instruction Number 404.02, Notes on Use 6 and 7,[1] and also

---

[1] Reflecting this Court's decision in *State v. Celis-Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011), MAI-CR 4th 404.02, Note 6 ("Place of Offense") provides "[t]he place of the offense may become of 'decisive importance' under certain circumstances, such

4

Supreme Court [c]ase *State v. Celis-Garcia*[, 344 S.W.3d 150 (Mo. banc 2011)]. Because this is a multiple acts case, we believe the verdict directors lack specificity as to the alleged crimes committed. We would request there be more details included which would consist of a narrower time frame, the location, maybe more details about which offense that the State is referring to.

. . . .

Because the Defendant has a right to a unanimous verdict that this could lead to the jury maybe unanimously agreeing upon different acts but not necessarily the same exact act.

The principal opinion acknowledges Mr. Hamby "clearly set forth the grounds for [the] objection" but states Mr. Hamby "did not identify the specific details in the evidence he believed distinguished one act of abuse from another that should have been included in the instructions to resolve his jury unanimity concern." It states the state was justified in arguing Mr. Hamby's objection was too general to provide the circuit court with adequate notice or an opportunity to correct the instruction because he failed to identify the evidentiary details the circuit court should have the state include in its verdict directors. A party is not required to articulate what should be included in a criminal instruction to preserve a claim of instructional error for appellate review. It is sufficient for appellate review that an objection to a criminal instruction is timely made in the circuit court, raised in a motion for new trial, and states "distinctly the matter objected to and the grounds of the objection." Rule 28.03; s*ee also State v. Borst*, 643 S.W.3d 586, 591 (Mo. App. 2022)

---

as . . . (c) where the defendant may have committed several separate offenses against the same victim at the same general location within a short space of time." And MAI-CR 4th 404.02, Note 7 (Verdict Unanimity in Multiple Acts Cases) explains "[a] 'multiple acts' case arises when evidence is introduced of at least two distinct criminal acts, each of which could serve as the basis for a finding of guilt, but the defendant is charged with only one offense in a single count."

5

(finding the error was preserved under Rule 28.03 when the defendant objected a particular action of the circuit court was erroneous for a particular reason); *Rogers v. Bond*, 839 S.W.2d 292, 295-96 (interpreting identical language in a civil rule, Rule 70.03, to find an objection that an instruction was argumentative and duplicative preserved the alleged error for appeal). With no legal basis, the principal opinion suggests Mr. Hamby – a criminal defendant – was required to tell the circuit court how to cure the defect in the state's verdict directors in addition to distinctly stating the matter objected to and the grounds of the objection. The record shows Mr. Hamby's compliance with the requirements of Rule 28.03 preserved his claims of error for review.

### Evidence of Multiple Distinguishable Commissions of Criminal Acts

Mr. Hamby claims the circuit court erred in submitting the verdict directors for each count because each verdict director failed to specify which of the multiple incidents supported by the evidence the jury was asked to agree he committed. He asserts that instructional error permitted the jury to convict him of each crime charged without unanimously agreeing on which specific occasion he committed the described criminal act. In that way, he asserts, the failure to specify the particular commission of the criminal act presented to the jury in each instruction violated his right of trial by jury preserved by article I, section 22(a) of the Missouri Constitution.[2] Whether a jury has been properly

---

[2] He also claims this instructional error violated his right to a unanimous verdict guaranteed by the Sixth Amendment and incorporated against the states under the Fourteenth Amendment. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). It is unnecessary to address this argument because he is entitled to relief under article I, section 22(a) of the Missouri Constitution.

instructed is a question of law reviewed *de novo*. *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 159 (Mo. banc 2012).

Article I, section 22(a) of the Missouri Constitution provides "the right of trial by jury as heretofore enjoyed shall remain inviolate . . . ." The right includes "all the substantial incidents and consequences that pertain to the right to jury trial at common law," including "the jury's unanimous concurrence in the verdict." *State v. Hadley*, 815 S.W.2d 422, 425 (Mo. banc 1991). For a jury verdict to be unanimous, the jury "must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." *Celis-Garcia*, 344 S.W.3d at 155 (alteration omitted). "Requiring the vote of twelve jurors to convict a defendant does little to [e]nsure that his [or her] right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required." *United States v. Gipson*, 553 F.2d 453, 458 (5th Cir. 1977).

A defendant's constitutional right to a unanimous verdict is at risk in a multiple acts case in which there is evidence of "multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56. "In this situation, the possibility exists that jurors would carefully follow the trial court's instructions, yet base their vote to convict a defendant on differing conduct[,]" raising the principal concern the jury's verdict does not reflect "unanimous agreement upon the same act or acts upon which the alleged crime is based." *State v. Rycraw*, 507 S.W.3d 47, 60 (Mo. App. 2016). If verdict directors are "overly generalized and identical" and "lacking in any admonition that [the jurors'] unanimity on the specific acts committed was required," the verdict directors risk that

7

jurors will "select any, all, or only one act of abuse from the larger pool of alleged criminal acts presented by the State . . . independently from each other, as their basis for returning convictions[.]" *State v. Carlton*, 527 S.W.3d 865, 878 (Mo. App. 2017). In *Celis-Garcia*, this Court held "a defendant's right to a unanimous verdict [is] protected in a multiple acts case" in one of two ways. 344 S.W.3d at 157. A unanimous verdict can be ensured by "either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director *specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously* that at least one of those acts occurred." *Id.* (emphasis added).

*Celis-Garcia* noted, in *obiter dictum*, a risk of a non-unanimous verdict may also arise in factual scenarios involving "repeated, identical sexual acts committed *at the same location* and during a short time span" when the victim is "unable to distinguish sufficiently among the acts." *Id.* at 157 n.8 (emphasis added); *see also State v. De La Torre*, 331 P.3d 815, 822 (Kan. 2014) ("[A] multiple acts problem may arise *even when the factual details about the multiple incidents are indefinite as to precisely when each occurred or even how many acts occurred.*" (emphasis added)). As this case demonstrates, the factual scenario of *Celis-Garcia* and that noted in its footnote 8 are not the only factual scenarios presenting the possibility jurors may unanimously find a defendant guilty and yet base their votes on different conduct. To borrow the principal opinion's vernacular, the facts of *Celis-Garcia* and factual scenarios in which the evidence does not differentiate between multiple acts of abuse represent opposite ends of a spectrum.

8

Unfortunately, the principal opinion fails to acknowledge this case presents a factual scenario that requires the application of the law governing both ends of the spectrum. Mr. Hamby is charged with multiple crimes (five) based on multiple criminal acts (two) occurring on multiple occasions (six to seven). The analysis of the issues raised is more complex because the evidence of Mr. Hamby's commission of the two criminal acts is indistinguishable on five or six occasions (one end of the principal opinion's spectrum) but the commissions of the two criminal acts on those occasions is distinct and distinguishable from one other occasion (falling squarely within *Celis-Garcia*). Specifically, Mr. Hamby is charged with three crimes based on the criminal act of touching H.D.'s genitals with his mouth and two crimes based on the criminal act of touching H.D.'s genitals with his genitals. There was evidence he committed the criminal acts five or six times in one location (the bedroom) under indistinguishable circumstances and once in a different location (the basement living room) under very different circumstances. In this scenario, "[t]he critical inquiry is whether either party has presented evidence that <u>materially</u> distinguishes any of the alleged multiple acts from the others." *State v. Nicholas*, 151 A.3d 799, 805 (Vt. 2016) (quoting *People v. Cooks*, 521 N.W.2d 275, 279 (Mich. 1994)).

Because Mr. Hamby's claims of error assert the state presented evidence of multiple distinct commissions of the same criminal conduct, it is necessary to conduct a more in-depth review of the evidence presented at trial and the jury instructions. At trial, the state presented the testimony of witnesses to whom H.D. made statements regarding Mr. Hamby doing "things to her she didn't like" and touching her genitals with his genitals and his mouth. H.D.'s friend testified H.D. told her Mr. Hamby sometimes entered her

9

room while she was sleeping and did "things to her she didn't like." To her friend, it was clear H.D. was talking about sex acts. H.D. told her friend sometimes she pretended to be sleeping when the abuse was happening and other times she was asleep. H.D.'s mother testified H.D. disclosed to her that Mr. Hamby would sometimes enter her bedroom at night and touch her genitals with his genitals and his mouth. The state also elicited testimony from a social worker at the St. Louis Children's Hospital who stated H.D. told her Mr. Hamby would come into her room and "put his front private in her private and that it would hurt" and that he would "put his mouth on her front private which was gross." H.D. told the social worker it happened "five to six times since the New Year's Eve Party."

H.D. was referred to a child advocacy center for an emergency forensic interview. The forensic interview was video recorded and took place over two days. The video recording of the interview was played for the jury at trial in two parts. The first part lasted about 47 minutes and covered the first day of the interview. In that part, the jury heard H.D. state Mr. Hamby entered her room and touched her "bladder" with his "bladder" on more than one occasion. She then indicated that by "bladder" she was referring to a person's genitals by circling the genital areas on drawings of a boy and girl.

The principal opinion correctly concludes this evidence of multiple but materially indistinguishable acts occurring in H.D.'s bedroom does not create a risk of jury non-unanimity. The abuse occurred in the same location, and the circumstances of Mr. Hamby committing the same two criminal acts followed the same pattern. And, although it is clear from H.D.'s description of the abuse that it occurred on different nights, H.D. did not specify when the incidents occurred. H.D.'s descriptions of the abuse

10

presented to the jury through the testimony of the state's witnesses did not materially distinguish between any of these five or six incidents occurring in her bedroom.[3] H.D.'s descriptions revealed the sort of repeated, identical, and indistinguishable sexual acts contemplated as the counterfactual in *Celis-Garcia*. *See* 344 S.W.3d at 157 n.8. If this were all the evidence presented, the principal opinion would be correct in holding there is no risk the jury found Mr. Hamby guilty without unanimously agreeing he committed the same specific acts. But, in addition to this evidence, the state presented evidence of a separate, distinct, and well-defined incident of sexual abuse occurring in a different location at a different time and under different circumstances.

The next day, the state played the second day of her interview for the jury. The jury observed the interviewer ask H.D. whether Mr. Hamby ever touched her "bladder" with his "bladder" in any location other than her bedroom as she had described during the first day of the interview. H.D. answered: "It's only happened one other place and that's in the downstairs living room."[4] She told the interviewer Mr. Hamby "did the things that he [did] every other time." When asked if "those things" included the things she described as Mr. Hamby touching her "bladder" with his "bladder," she answered affirmatively. While H.D. was not asked whether "those things" included Mr. Hamby touching her genitals with

---

[3] H.D.'s statements to witnesses included details that on some occasions she was awake and on other occasions she was sleeping, but these details were not connected to any specific occasion. As articulated by the principal opinion, "H.D.'s general recollection of her varying states of wakefulness during the abuse did not describe a single episode of abuse to differentiate between the repeated acts, thereby failing to establish any distinct incident of abuse."

[4] In her interview, H.D. referred to the location as the "downstairs" living room. To be consistent with other references to the location throughout trial and in the principal opinion, this opinion will refer to the location she described as the basement living room hereinafter.

11

his mouth, it is reasonably inferred from H.D.'s statement that Mr. Hamby "did the *things* that he does every other time" that Mr. Hamby committed both criminal acts in the basement because touching her "bladder" with his "bladder" was not the only "thing" he did every other time. When pressed further, however, she stated she did not know what Mr. Hamby did to her but later in the interview she stated his "body touched her body."

She then went on to describe the incident to the interviewer. She said she, her sister, and a friend were sleeping in the basement living room on the couch. She described where the girls were lying on the couch and drew a diagram depicting the couch and the girls' positions on it, which was admitted into evidence. H.D. stated her legs were hanging off the couch when the abuse occurred, described where Mr. Hamby stood in relation to her body, and told the interviewer the other girls did not see Mr. Hamby because they were asleep.

Throughout the forensic interview, H.D. was hesitant to provide any details about the abuse and stated multiple times she was scared about what would happen if she did. She stated her mother told her they might lose their home because Mr. Hamby "ha[d] all the money." She expressed fear her family would lose Mr. Hamby and she would lose her cats. She also stated she was hesitant to talk about the abuse because so doing might provide more evidence "to put her dad in prison."

After the forensic interview was played for the jury, the state called as the last witness of its case in chief the interviewer, Cammie Maue. Ms. Maue testified H.D. was

12

able to recount sensory details about the incident in the basement,[5] draw the couch in the basement, and specify where she was lying on the couch. The state also elicited testimony from Ms. Maue that it is common for child victims to recant their disclosures because it often is easier for children to "take it back" than for others to deal with the consequences of the disclosure.

In his cross-examination of Ms. Maue, Mr. Hamby's counsel questioned her four separate times regarding H.D.'s account of Mr. Hamby committing criminal acts in the basement. One such time, Mr. Hamby's counsel questioned Ms. Maue about the inconsistencies in H.D.'s account. Counsel emphasized that H.D. first said Mr. Hamby "did the things that he does every other time" and touched her "bladder" with his "bladder" but then stated she did not know what he did. Counsel also focused on the apparent inconsistency created when she stated Mr. Hamby did the things he did every other time but she was clothed and her clothes stayed on during the abuse.

After the forensic interview, H.D. recanted her statements and, at trial, testified Mr. Hamby had never touched her inappropriately and she had lied in her forensic interview.

In sum, the state presented evidence Mr. Hamby sexually abused H.D. five or six times by entering her room at night and touching her genitals with his genitals and his mouth. On one separate incident, Mr. Hamby touched H.D.'s genitals with his genitals and

---

[5] The state asked Ms. Maue: "Now, and in the basement also [H.D.] was able to provide you the sensory detail you talked about earlier?" The question referenced an answer given previously when Ms. Maue said H.D. could recount sensory details, such as the positioning of her body, Mr. Hamby's body, and "the way it felt."

his mouth on the couch in the basement living room while her sister and a friend were present but asleep. That being so, the state's evidence presented multiple but indistinguishable acts of genital-to-genital contact and mouth-to-genital contact occurring in H.D.'s bedroom, which did not create a jury unanimity issue, but also an additional and readily distinguishable incident of abuse occurring in the basement living room, the significance of which the principal opinion fails to acknowledge.

At the conclusion of the evidence, verdict directors for the two counts of first-degree sodomy and one count of incest were submitted to the jury in Instruction Nos. 8, 9, and 10. Instruction Nos. 8 and 9 (Counts 1 and 2 respectively) submitted that Mr. Hamby committed first-degree statutory sodomy by placing his mouth on H.D.'s genitals. To distinguish between the occasions, Instruction No. 8 submitted "the defendant knowingly had deviate sexual intercourse with H.D. by placing his mouth on her genitals, *separate and distinct from Count 2*," and Instruction No. 9 submitted "the defendant knowingly had deviate sexual intercourse with H.D. by placing his mouth on her genitals, *separate and distinct from Count 1*." (Emphasis added). Instruction No. 10 (Count 3) submitted that Mr. Hamby committed the crime of incest "by placing his mouth on H.D.'s genitals." Instruction No. 10 did not include language that the act be separate and distinct from the acts submitted in Instruction Nos. 8 and 9.

The verdict directors for the offenses of first-degree child molestation and first-degree attempted rape were Instruction Nos. 11 and 12, respectively. Those verdict directors were that Mr. Hamby "touched H.D.'s genitals with his genitals" with no identifying details other than the act submitted in each instruction was "separate and

14

distinct" from the act submitted in the other instruction. Instruction No. 11 (Count 4) submitted that Mr. Hamby committed first-degree child molestation if the jury found he "touched H.D.'s genitals with his genitals, separate and distinct from Count 5[.]" Instruction No. 12 (Count 5) submitted that Mr. Hamby committed first-degree attempted rape by "touch[ing] H.D.'s genitals with his genitals, separate and distinct from Count 4[.]"

The clauses in the instructions submitting conduct "separate and distinct from" other counts submitting the same acts would have sufficed to ensure jury unanimity had the evidence been only that Mr. Hamby committed several indistinguishable acts in H.D.'s bedroom. But because the evidence clearly presented an additional distinguishable incident of such contact in another location at a different time any one juror could find Mr. Hamby guilty under Instruction Nos. 8, 9, and 10 based solely on mouth-to-genital contact in the bedroom while another juror could find Mr. Hamby guilty following the same instructions based on mouth-to-genital contact occurring in the bedroom and the same contact occurring on the couch in the basement living room. There is the same defect in Instruction Nos. 11 and 12, which were based on five to six incidents of genital-to-genital contact in the bedroom and one such act in the basement. Therefore, the instructions failed to ensure the jury unanimously agreed on the specific acts Mr. Hamby committed. *Celis-Garcia*, 344 S.W.3d at 156.

The principal opinion erroneously holds H.D.'s description of the incident occurring at a different time on the couch in the basement living room while her sister and a friend were present "does not risk the jurors' ability to substantially agree on their verdict." It appears the principal opinion so finds for three reasons: it does not find H.D.'s forensic

15

interview statements were credible, it fails to acknowledge the evidence of the abuse occurring in the basement established a separate and distinct incident of abuse, and it erroneously states evidence of the abuse occurring in the basement was "predicated upon the repeated abuse H.D. described occurring in the bedroom."  None of the three is a valid legal basis for disregarding evidence of H.D.'s statement that on a different night in the basement living room, when she, her sister, and a friend were sleeping on the couch, Mr. Hamby committed the two criminal acts submitted in the five verdict directors.

With respect to the principal opinion's implication that H.D.'s statements were not credible, the principal opinion recognizes H.D. stated in the forensic interview that, on one occasion in the basement living room, Mr. Hamby "did the things that he does every other time."  It also acknowledges that, when Ms. Maue asked H.D. whether "'those things that he's done every other time' included 'the things that [H.D. was] talking about in the bedroom' with [her] bladder and his bladder," H.D. nodded affirmatively.  It then sets out inconsistent statements H.D. made, thereafter, in the interview that she did not remember what happened and did not know what Mr. Hamby did, did not remember or want to talk about it, and did not know which part of Hamby's body touched her.  It relies on the inconsistent statements and the fact H.D. described the incident in the basement "only once during the many disclosures she made to numerous individuals" to find H.D.'s testimony was insufficient to risk jury unanimity.

In suggesting H.D.'s statements during the forensic interview did not sufficiently differentiate the criminal acts occurring in the basement from the those occurring in the bedroom because she later stated she did not remember what happened and did not want to

16

talk about it, the principal opinion fails to apply a bedrock principle of appellate review –

that a reviewing court is prohibited from judging the credibility of a witness's testimony

because "the jury has the right to disbelieve all or any part of the evidence, and refuse to

draw needed inferences . . . ." *State v. Jackson*, 433 S.W.3d 390, 399 (Mo. banc 2014);

*accord State v. Pierce*, 433 S.W.3d 424, 432 (Mo. banc 2014).

The jury was entitled to believe H.D.'s statement Mr. Hamby "did the things he

[did] every other time" and touched H.D.'s genitals with his mouth and his genitals on the

couch in the basement living room. It was equally entitled to disbelieve H.D.'s later

statements she did not know what he did and her later recantation. The state presented

expert testimony from Ms. Maue, the forensic interviewer, that would support the jury's

belief that H.D.'s statements about Mr. Hamby committing the same criminal acts in the

basement living room that he committed in her bedroom on five or six occasions rather

than her statements she did not remember what happened or know what he did. Ms. Maue

testified that a child victim often recants statements that the child was abused, not because

the disclosure was false but because the child faces external pressures. And the jury heard

H.D. state during the forensic interview that she experienced such external pressures,

including her belief she and her family might lose their home because Mr. Hamby "ha[d]

all the money"; her fear her family would lose Mr. Hamby; her belief she may lose her

cats; and her fear that disclosing the abuse might provide more evidence "to put her dad in

prison." This Court cannot conclude the jury did not rely on evidence of the criminal acts

occurring in the basement in finding Mr. Hamby guilty. "This Court does not sit as a super

juror with veto power over the jury's verdict and will not substitute its own credibility determination for that of the jury." *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018).

Contrary to the principal opinion's conclusion the evidence did not present a separate and distinct incident, an examination of the record compels the opposite conclusion. While H.D.'s account of the criminal acts occurring in the basement were a proportionately brief portion of her forensic interview, her account presented the jury with evidence of a separate incident of abuse occurring at a different time, in a different place, and under different circumstances. Furthermore, she described the incident in greater detail than any other incident, and it was repeatedly the subject of questions during the forensic interviewer's testimony and a focus of the state's as well as Mr. Hamby's closing arguments.

During cross-examination of Ms. Maue, Mr. Hamby questioned her about H.D.'s account of what occurred in the basement living room four separate times and asked questions about H.D.'s inconsistent statements regarding what occurred that night. Specifically, Mr. Hamby elicited testimony from Ms. Maue that H.D.'s statement her pajamas remained on during the basement incident was confusing and took the position it was inconsistent with allegations of genital-to-genital contact. The record shows the jury considered this inconsistency significant because it sent a note to the court, during deliberations, asking whether the "genital-to-genital contact" referenced in Instruction No. 11 "must be skin-to-skin contact" and whether "touching over the clothes constitute[s] molestation." The jury was instructed by the circuit court in response to these questions that it should "confine itself to the evidence and the instructions of the court."

Additionally, during its initial closing argument, the state acknowledged the basement abuse was distinct from the abuse described as occurring in H.D.'s bedroom. It explained to the jury that count 1 charged first-degree sodomy "separate and distinct" from the same charge in count 2 because the "acts happened multiple times and they're all pretty much the same way each time. *One time she talked about it taking place in the basement, but for the most part the acts are the same way*." (Emphasis added). Similarly, in Mr. Hamby's closing argument, he expressly referenced H.D.'s testimony regarding Mr. Hamby's conduct in the basement living room and highlighted inconsistencies that related solely to H.D.'s account of what occurred on that occasion. Then, in the state's rebuttal, the state referenced the "sleep over," which described only the basement abuse, in its final summation of the case. This record positively establishes that, in addition to the multiple indistinguishable acts occurring in H.D.'s bedroom, there was a separate and distinct incident of abuse that occurred in a different place, at a different time and under different circumstances. Because the jurors were presented with evidence of a separate and distinct incident occurring in the basement, they could have substantially disagreed about which incident Mr. Hamby committed. *State v. Hunt*, 503 P.3d 1067, 1076 (stating that, had the victim testified incidents of abuse occurred "one day in the bedroom and on another day in the living room and on another day in the kitchen," a specific unanimity instruction would have been required).

Finally, the principal opinion finds the evidence did not present multiple, distinct acts because H.D. described her account of the criminal acts occurring in the basement living room with reference to her description of the criminal acts occurring in her bedroom.

Its authority for this finding is a single sentence from the *Corpus Juris Secundum*: "*A specific unanimity instruction is not necessary if the acts constituting the crime* amount to a continuous course of conduct or one transaction, or *are interrelated*, or if the evidence should be considered as a whole." 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1879 (updated 2023) (emphasis added). The reference to interrelated acts does not refer to the factual scenario presented in this case.

The footnote following the reference in *Corpus Juris Secundum* to interrelated acts cites a single case, *United States v. Schiff*, 801 F.2d 108, 109 (2d Cir. 1986). In *Schiff*, a defendant who failed to file income tax returns or pay income taxes for the tax years 1980 through 1982 was charged in three counts, one for each tax year, with knowingly attempting to evade and defeat the income tax he owed by failing to file returns, failing to pay taxes, and concealing and attempting to conceal his income. *Id.* at 115. The court held a special unanimity instruction was not required regarding the defendant's multiple acts within each tax year because "the alleged acts were closely interrelated and carried out by a single individual." *Id.* But it distinguished the facts before it from cases – such as the case at bar – in which the alleged acts were, among other things, committed at different times and in separate locations. *Id.*

*Unlike Schiff*, this case involves a risk jurors disagreed about the specific acts Mr. Hamby committed. Mr. Hamby faced five separate criminal charges for the commission of multiple separate criminal acts on different dates under undistinguishable circumstances but, on a different date, the criminal acts were committed in a different place, motivated by a fresh impulse, and occurring under markedly different circumstances than

20

the other occasions described. While H.D. *described* what Mr. Hamby did to her on the couch in the basement by referring to "the things that he does every other time," she was describing the criminal acts by reference to her previous *description* of the other criminal acts Mr. Hamby had committed. The manner in which H.D. described Mr. Hamby's acts in the basement did not require the jury to believe Mr. Hamby actually had abused H.D. in her bedroom for it to find Mr. Hamby abused H.D. in the basement. The principal opinion fails to avoid the simple fact the jury heard detailed evidence of a readily distinguishable act that created a risk of jury non-unanimity. Because the state presented evidence of multiple distinct acts, each of which could support the crimes charged, the instructions erroneously failed to ensure the jury unanimously agreed on the specific acts Mr. Hamby committed.

Having determined the circuit court erred, the question becomes whether that error requires reversal. Under this Court's standard of review, an instructional error merits reversal when the "instructional error misled the jury and, thereby, prejudiced the defendant." *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016). When the instructional error is preserved, the "defendant need not establish that the jury was more likely than not to have misapplied the instruction [because it] is sufficient that there is a *reasonable likelihood that the jury has misapplied the challenged instruction* in a way which violates the defendant's constitutional rights." *State v. Erwin*, 848 S.W.2d 476, 483 (Mo. banc 1993) (emphasis added) (internal quotations omitted).

Given the state's focus during closing argument on the separate occasion when the two criminal acts were committed in the basement living room, Mr. Hamby's focus during

21

cross-examination and argument on evidentiary inconsistencies specific to that incident, and the jury's question about whether it could find him guilty of first-degree child molestation for "touching over the clothes," it is reasonably likely the jury applied the challenged instructions in a way that violated defendant's constitutional right to a unanimous verdict under article I, section 22(a) of the Missouri Constitution. Accordingly, the circuit court's judgment should be reversed.

## Conclusion

With respect to each crime submitted in each verdict director, there was evidence of more than one distinct commission of that offense. Mr. Hamby preserved his claims the verdict directors were erroneous for failure to require jury unanimity by making a specific objection that the verdict directors lacked the specificity required to ensure juror unanimity. The circuit court erred in submitting five verdict directors that did not require unanimous agreement by the jury as to the specific criminal act submitted in each instruction. Accordingly, I dissent from the principal opinion's holding that the circuit court did not err because the evidence was insufficient to require the verdict directors to instruct the jurors they must unanimously agree on a specific criminal act to find Mr. Hamby guilty and, instead, would reverse the judgment convicting Mr. Hamby of five felony offenses and remand the case for a new trial.

_____
PATRICIA BRECKENRIDGE, JUDGE